# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| TODD M. NORTH, *on behalf of himself and those similarly situated,*<br><br>          Plaintiff,<br><br>vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC; and JOHN DOES 1 to 10,<br><br>          Defendants. | Civil Action No.:<br>2:20-cv-20190-BRM-JSA |

## PLAINTIFF TODD M. NORTH'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Yongmoon Kim
KIM LAW FIRM LLC
411 Hackensack Avenue, Suite 701
Hackensack, New Jersey 07601
Tel. & Fax (201) 273-7117
ykim@kimlf.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................... 1

I.   PRA HAD TO BE LICENSED .................................................... 5

II.  THE EQUITABLE DEFENSE OF ENTIRE CONTROVERSY OR RES JUDICATA
     IS NOT SUPPORTED BY THE ALLEGATIONS OF THE COMPLAINT. .......... 8

     A.   The Claims Are Not Barred By The Entire Controversy
          Doctrine. ............................................................................ 8

     B.   The Claims Are Not Barred By Res Judicata. ................ 11

     C.   Application Of These Equitable Doctrines Is Not Fair
          Under These Circumstances And PRA's Unclean Hands
          Prevent It From Raising Equitable Defenses. ................ 13

III. THE CONSUMER FRAUD ACT APPLIES TO ACTS "IN CONNECTION WITH
     THE SALE . . . OR WITH THE SUBSEQUENT PERFORMANCE" AND
     INCLUDES ASSIGNEES WHO ARE SUBJECT TO THE SAME LIMITS
     APPLICABLE TO ITS ASSIGNOR. .......................................... 16

IV.  NORTH'S CLAIMS BASED ON MISREPRESENTATIONS, UNLAWFUL
     CONDUCT AND OMISSIONS ARE ADEQUATELY PLED. ........................ 25

V.   THE PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT
     BASED ON DEFENDANT COLLECTING MONEY FROM HIM WHEN IT WAS
     NOT LICENSED TO DO SO. .................................................... 28

     A.   There Are Factual Issues As To Whether There Is A
          Contract. ......................................................................... 29

VI.  PLAINTIFF MAY ASSERT A CLAIM UNDER THE NEW JERSEY
     DECLARATORY JUDGMENT ACT. ........................................ 33

VII. NORTH SHOULD BE GRANTED LEAVE TO AMEND ANY DEFICIENCIES IN
     THE COMPLAINT. ................................................................. 34

i

**CONCLUSION**......................................................................................................**35**

# TABLE OF AUTHORITIES

## CASES

*A. Hollander & Son, Inc. v. Imperial Fur Blending Corp.*, 2 N.J. 235, 66 A.2d 319 (1949) ................................................................................................................16

*Arroyo v. Stoneleigh Recovery Assocs., LLC*, No. 18-cv-12161-JMV, 2019 U.S. Dist. LEXIS 138287 (D.N.J. Aug. 14, 2019) ........................................................6

*Bank Leumi USA, v. Kloss*, 233 A.3d 536, 243 N.J. 218 (2020) .............................9

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) ..........................................35

*Bell Atl. Corp. v Twombly*, 550 U.S. 544 (2007) ......................................................3

*Borough of Princeton v. Board of Chosen Freeholders of County of Mercer*, 169 N.J. 135 (2001) ...............................................................................................16

*Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543 (2009) ............................................7

*Boyko v. Am. Int'l Group, Inc.*, 2009 U.S. Dist. LEXIS 119339, 2009 WL 5194425 (D.N.J. Dec. 23, 2009) ...............................................................................22

*Cafferata v. Peyser*, 597 A.2d 1101, 251 N.J. Super. 256 (App. Div. 1991) ..........11

*Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, No. 2:16-cv-1235-JLL-JAD, 2017 U.S. Dist. LEXIS 133286 (D.N.J. Aug. 18, 2017) .......................................7

*Chulsky v. Hudson Law Offices, P.C.,* 777 F. Supp. 2d 823 (D.N.J. 2011) ..... 20, 21

*Constant v. Pacific Nat'l Ins. Co.*, 84 N.J. Super. 211, 201 A.2d 405 (App. Div. 1964) ................................................................................................................12

*Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410 (Mo. 2014) .......................... 19, 20

*Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 138 N.J. 2 (1994) ..............................25

*Cty. of Essex v. First Union Nat'l Bank,* 373 N.J. Super. 543 (App. Div. 2004), *aff'd and remanded* 186 N.J. 46 (2006)), *certif. denied,* 200 N.J. 502 (2009) ............28

*Culver v. Insurance Co. of N. Am.*, 559 A.2d 400, 115 N.J. 451 (1989) ................12

*DepoLink Court Reporting & Litigation Support Services v. Rochman*, 430 N.J.
  Super. 325 (App. Div. 2013) ...............................................................22

*Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C.*, 203
  A.3d 133, 237 N.J. 91 (2019) ...............................................................13

*Eatough v. Board of Medical Examiners*, 191 N.J. Super. 166, 465 A.2d 934 (App.
  Div.1983) ........................................................................................12

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ................35

*Faustin v. Lewis*, 85 N.J. 507, 427 A.2d 1105 (1981) ...............................16

*Francis E. Parker Mem'l Home, Inc. v. Ga.-Pacific LLC*, 945 F.Supp.2d 543
  (D.N.J. 2013) ..................................................................................27

*Franulovic v. Coca–Cola Co.*, No. 07–539-RMB, 2007 WL 3166953, 2007 U.S.
  Dist. LEXIS 79732 (D.N.J. Oct. 25, 2007) ...........................................27

*Goldsmith v. Camden Cty. Surrogate's Office,* 408 N.J. Super. 376 (App. Div.
  2009) ............................................................................................28

*Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 207 N.J. 557 (2011) ........... 1, 18

*Greenleaf v. Garlock, Inc.*, 174 F.3d 352 (3d. Cir. 1999) .......................12

*Hager v. Selene*, No. 19-13650-FLW, 2020 U.S. Dist. LEXIS 30224 (D.N.J. Feb.
  19, 2020) ......................................................................................25

*Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090 (N.J. Super. Ct.
  App. Div. June 22, 2006) ...................................................................23

*Heuer v. Heuer*, 152 N.J. 226, 704 A.2d 913 (1998) ...............................16

*Hoffman v. Encore Capital Group, Inc.*, No. A-3008-07T1, 2008 N.J. Super.
  Unpub. LEXIS 1627, 2008 WL 5245306 (N.J. Super. Ct. App. Div. Dec. 18,
  2008) ............................................................................................17

*In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517 (D.N.J. 2004) ....................31

*Jackson v. Birmingham Bd.*, 544 U.S. 167 (2005) ....................................3

*Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520 (App. Div. 2008) ...........17

*Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719 (D.N.J. 2008).................22

*Johnson v. City of Shelby*, 135 S. Ct. 346 (2014) ......................................................4

*Katz v. Ambit Northeast, LLC*, No. 3:20-cv-1289-BRM-DEA, 2020 WL 5542780 (D.N.J. Sept. 16, 2020) .........................................................................................23

*Kehr Packages, Inc. v. Fidelcor, Inc*., 926 F.2d 1406 (3d Cir. 1991) ......................4

*Kontos v. Robbins*, No. A-3288-14T3, 2016 N.J. Super. Unpub. LEXIS 1555 (Super. Ct. App. Div. July 5, 2016).......................................................................28

*Kram v. Kram*, 94 N.J. Super. 539, 229 A.2d 285 (Ch. Div. 1967) .......................12

*Kram v. Kram*, 98 N.J. Super. 274 A.2d 271 (App. Div.1967) ..............................12

*La Porte Const. Co. v. Bayshore Nat. Bank*, 805 F.2d 1254 (5th Cir. 1986) .........35

*Latteri v. Mayer*, No. 17-13707-JLL, 2018 U.S. Dist. LEXIS 85926 (D.N.J. May 22, 2018).........................................................................................................7

*Lee v. Carter-Reed Co., L.L.C.,* 203 N.J. 496 (2010) .............................................16

*Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 696 A.2d 546 (1997)17, 23

*Lettenmaier v. Lube Connection, Inc*., 162 N.J. 134 (1999)....................................16

*Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-cv-01117-SDW-SCM, 2016 WL 4820629 (D.N.J. Sept. 14, 2016).................................................... 5, 15

*Mathiesen v. Moleski*, No. A-0365-10T3, 2011 WL 3516927 (N.J. Super. Ct. App. Div. Aug. 12, 2011) ..............................................................................................22

*McLean v. U.S*., 566 F.3d 391 (4th Cir. 2009).........................................................35

*McNeil v. Legislative Apportionment Com'n of State*, 828 A.2d 840, 177 N.J. 364 (2003)..................................................................................................................12

*Morganroth Morganroth v. Norris, McLaughlin*, 331 F.3d 406 (3d Cir. 2003) .......3

*Nicholls v. Portfolio Recovery Associates, LLC,* No. 09-5714-GEB, 2010 WL 1257738 (D.N.J. March 29, 2010)..........................................................................22

*Pace v. Kuchinsky*, 347 N.J. Super. 202, 789 A.2d 162 (App. Div. 2002)..............13

*Perez v. Rent A Center Inc.*, 892 A.2d 1255, 186 N.J. 188 (2006)................... 24, 25

*Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-10025-BRM-DEA, 2018 U.S. Dist. LEXIS 119417 (D.N.J. July 16, 2018) ................................................. 18, 26

*Pollitt v. DRS Towing, LLC*, No. 10-1285-AET, 2011 WL 1466378 (D.N.J. April 18, 2011)................................................................................................................17

*Prevratil v. Mohr*, 145 N.J. 180 (1996) ...................................................... 9, 10, 11

*Rosenzweig v. Transworld Sys., Inc.*, No. 16-227-JMV, 2016 U.S. Dist. LEXIS 127928 (D.N.J. Sept. 20, 2016)..............................................................................18

*Smajlaj, et al. v. Campbell Soup Co.*, 782 F.Supp.2d 84 (D.N.J. 2011)..................27

*Solomon Schechter Day Sch. & Sinai Special Needs Inst. v. C&A Benefits Grp. LLC*, No. 2:20-cv-1122-WJM, 2021 WL 1573843 (D.N.J. Apr. 22, 2021) .........2

*State ex rel. Koster v. Portfolio Recovery Associates, LLC*, 351 S.W.3d 661 (Mo. App. 2011) ..............................................................................................................20

*Thieme v. Aucoin-Thieme*, 227 N.J. 269 (2016) .....................................................32

*Tompkins v. Selip & Stylianou, LLP*, No. 18-12524-JLL, 2019 U.S. Dist. LEXIS 21937 (D.N.J. Feb. 11, 2019) ..................................................................................6

*Valentine v. Unifund CCR, Inc.*, No. 20-cv-5024-JMV-JSA, 2021 U.S. Dist. LEXIS 44747 (D.N.J. Mar. 10, 2021)....................................................................6

*Veras v. LVNV Funding, LLC*, No. 13-1745-RBK-JS, 2014 WL 1050512 (D.N.J. March 17, 2014) ........................................................................................... 5, 15

*Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462 (D.N.J. 2007) .......23

*Whittingham v. Mortg. Elec. Registration Servs.*, No. 06-3016-RBK, 2007 WL 1456196. 2007 U.S. Dist. LEXIS 33476 (D.N.J. May 15, 2007) .......................19

*Wilson v. Deutsche Bank Nat. Trust Co.*, No. A-3327-12T3, 2014 WL 1716093
    (N.J. Super. Ct. App. Div. May 2, 2014) ...................................................... 24, 25

*Wyche v. Tsarouhis*, 385 F. Supp. 3d 392 (E.D. Pa. 2019) ........................................6

## STATUTES

N.J.S.A § 17:11C, et seq. ...........................................................................................5

N.J.S.A. § 17:11C-3 ....................................................................................................5

N.J.S.A. 17:11C-3(a) ................................................................................................31

N.J.S.A. 17:11C-33 ................................................................................... 26, 30, 31

N.J.S.A. 17:11C-44 ..................................................................................................31

N.J.S.A. 2A:16-50 to -62 .........................................................................................33

N.J.S.A. 2A:16-53 ....................................................................................................34

N.J.S.A. 56:8-2 ................................................................................................... 1, 17

## RULES

Fed. R. Civ. P. 12(b)(6).......................................................................................... 3, 34

Fed. R. Civ. P. 12(c)...................................................................................................5

Fed. R. Civ. P. 15(a)................................................................................................34

Fed. R. Civ. P. 8 .......................................................................................................4

Fed. R. Civ. P. 8(a)(2)................................................................................................4

Fed. R. Civ. P. 9(b) ............................................................................................. 4, 27

## OTHER AUTHORITIES

Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ........ 28, 31

**INTRODUCTION**

The Consumer Fraud Act defines unlawful practice as the "use or employment by *any person* of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection* with the sale or advertisement of any merchandise or real estate, *or with the subsequent performance* of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ." N.J.S.A. 56:8-2 (emphasis added). The New Jersey Supreme Court in *Gonzalez v. Wilshire* applied the plain language of the CFA to cover post-transaction activity.

Here, Defendant attempted to take assignment of a credit sale and misrepresented to Mr. North that it was the legal assignee. Defendant then took money from Mr. North upon this deception, fraud, false pretense, misrepresentation, knowing concealment, and omission of this material fact. Mr. North has valid claims.

**ARGUMENT**

Plaintiff, Todd M. North ("North"), opposes the Defendant Portfolio Recovery Associates, LLC's ("PRA") Motion for Judgment on the Pleadings. Contrary to PRA's assertions, North has stated valid claims against PRA. To the

extent that there are factual issues relating to whether or not North can prevail, these factual issues cannot be resolved on a motion for judgment on the pleadings any more than factual issues can be resolved by a motion to dismiss since the same standard applies. The standard was recently summarized by the court in *Solomon Schechter Day Sch. & Sinai Special Needs Inst. v. C&A Benefits Grp. LLC*, No. 2:20-cv-1122-WJM, 2021 WL 1573843, at *3 (D.N.J. Apr. 22, 2021):

> Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether the plaintiff has pleaded sufficient factual matter to show that the claim is facially plausible. See Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

> This same standard is applied to a Rule 12(c) motion for judgment on the pleadings when the motion is based on the defense that the plaintiff has failed to state a claim. Zimmerman v. Corbett, 873 F.3d 414, 417 (3d Cir. 2017). "A motion for judgment on the pleadings should be granted if the movant establishes that 'there are no material issues of fact, and he is entitled to judgment as a matter of law.' " Id. at 418 (quoting Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005)). Just as with a Rule 12(b)(6) motion to dismiss, a court evaluating a Rule 12(c) motion "must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." Id.

Since it is treated as Rule 12(b)(6), "[a] Rule 12(b)(6) motion should not be used to address credibility or proof issues in a complaint. *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2007); *Jackson v. Birmingham Bd.*, 544 U.S. 167, 184 (2005); *Morganroth Morganroth v. Norris, McLaughlin*, 331 F.3d 406, 416 (3d Cir. 2003).

PRA is improperly using a Rule 12(b)(6) motion to challenge North's factual allegations and the strength of the evidence supporting North's claims. This is not the purpose of a Rule 12(b)(6) motion, which is only supposed to test the legal sufficiency of claims. Because PRA has attacked the evidentiary support for North's allegations and not their legal sufficiency, the motion to dismiss must be denied.

PRA sets forth four reasons it contends that it can meet this standard contending that (i) there is no private cause of action under the licensing statute and no declaratory judgment is permitted despite that the statute provides that unlicensed transactions are void, (ii) that the New Jersey Consumer Fraud Act can never apply to debt collection in connection with a sale; (iii) that an unjust enrichment cannot be asserted in the alternative because PRA contends that it has a contractual relationship with Plaintiff ignoring the allegations that any alleged assignment to it is "void" under the licensing law; and (iv) that Plaintiff's claims are barred under the equitable doctrine of entire controversy or res judicata.

PRA's arguments fail because an examination of the complaint demonstrates that it sets forth legally sufficient claims for relief. As for PRA's argument that assert defenses, there are no facts alleged in the Complaint to support the defenses argued by PRA. Given, it is not North's burden to prove that its complaint states a claim, but rather that it is PRA's burden to demonstrate that the Complaint fails to state a claim for relief, PRA has not satisfied this burden. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991) (The party moving for dismissal has the burden of showing that no claim has been stated)

PRA also contends that North's Complaint has deficiencies. Nowhere does PRA claim that it does not have notice of the claims being asserted against it. The Complaint meets the requirements of the Federal Rules that only require a "short and plain statement" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8. The Complaint easily satisfies this requirement. The Court should construe a Plaintiff's allegations liberally because the Federal Rules require only "notice" pleading, not detailed fact pleading. Under Rule 8(a)(2), a pleading is only required to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). It also advises PRA of the basis for the Consumer Fraud Act with sufficient particularity required by Rule 9(b).

PRA is improperly using a Rule 12(c) motion to challenge North's factual allegations, the strength of the evidence supporting North's claims and argues defenses that are not supported by the allegations of the Complaint. This is not the purpose of a Rule 12(c) motion, which is limited to testing the legal sufficiency of claims.

## I.    PRA HAD TO BE LICENSED.

In *Veras v. LVNV Funding, LLC*, No. 13-1745-RBK-JS, 2014 WL 1050512, at *4 (D.N.J. March 17, 2014), the District Court held that the plaintiff had properly alleged a claim under the FDCPA because LVNV (a debt buyer) was not licensed under the NJCFLA. And since the law required it to be licensed, LVNV was not the lawful owner of the debt. *Id*. at *3. Similarly, in *Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-cv-01117-SDW-SCM, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016) the District Court held a debt buyer had to be licensed. *Lopez* analyzed the New Jersey Consumer Finance Licensing Act:

> Under the New Jersey Consumer Finance Licensing Act, "consumer lenders;" defined as "a person licensed, or a person who should be licensed, under [N.J.S.A §§ 17:11C *et seq.*] to engage in the consumer loan business; are prohibited from "engag[ing] in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act" N.J.S.A. § 17:11C-3. Moreover, the NJCFLA specifies that "[a]ny person directly or indirectly engaging in the business . . . of buying, discounting or endorsing notes, or of furnishing, or procuring guarantee or security for compensation in amounts of $50,000 or less, shall be deemed to be engaging in the consumer loan business." *Id.* § 17:11C-2.

*Lopez* held that "a debt collector's representation in a collection complaint that it had the right to collect a debt when, in fact, it lacked the license required to initially purchase the debt, would violate, at minimum, FDCPA section e(10)." *Id.* at 2016 WL 4820629, at *5.

More recently, in denying a motion to dismiss, the District Court found a debt buyer who allegedly purchased a defaulted Capital One debt to meet the definition of a consumer lender under the NJCLFA. *Valentine v. Unifund CCR, Inc.*, No. 20-cv-5024-JMV-JSA, 2021 U.S. Dist. LEXIS 44747, at *12 (D.N.J. Mar. 10, 2021). *See also Arroyo v. Stoneleigh Recovery Assocs., LLC*, No. 18-cv-12161-JMV, 2019 U.S. Dist. LEXIS 138287, at *13 (D.N.J. Aug. 14, 2019) (assignee of Capital One loan had to be licensed); *Wyche v. Tsarouhis*, 385 F. Supp. 3d 392, 393-94 (E.D. Pa. 2019) ("After careful parsing of the Pennsylvania Consumer Credit Code and persuaded by the remedial purposes of the Fair Debt Collection Practices Act and the reasoning of several courts in other Districts facing the same issue under their state licensing laws, we agree with the defaulted borrower as to the company's inability to file a lawsuit to collect this deficiency judgment. As it lacked a license, the company could not sue on the deficiency judgment in its own name and its state court lawsuit misrepresents this fact in collecting the debt."); *Tompkins v. Selip & Stylianou, LLP*, No. 18-12524-JLL, 2019 U.S. Dist. LEXIS 21937 (D.N.J. Feb. 11, 2019) (assignee of Juniper Bank

had to licensed); *Latteri v. Mayer*, No. 17-13707-JLL, 2018 U.S. Dist. LEXIS 85926, at *6 (D.N.J. May 22, 2018) (motion to dismiss denied where plaintiff alleged defendant violated the FDCPA when it attempted to collect a debt on behalf of an unlicensed consumer lender); *Chernyakhovskaya v. Resurgent Capital Servs. L.P.*, No. 2:16-cv-1235-JLL-JAD, 2017 U.S. Dist. LEXIS 133286, at *15-16 (D.N.J. Aug. 18, 2017) (finding Article III standing).

The NJCFLA statutory provisions support the conclusions reached by this District: that the Act covers a debt buyer since it includes any person "buying" debts of less than $50,000.00 under §17:11C-2 and collections is specifically identified under §17:11C-33. Absent ambiguity, Courts are bound to enforce the plain language of the statute which the Legislature enacted. *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 553 (2009). And, as further and conclusive evidence that the Defendant was required a license to act as debt buyer in New Jersey, Defendant itself sought and obtained licenses *after* it collected from North.[1]

The requirement that buyers of consumer debt also be licensed makes sense because otherwise an original creditor could simply assign the debt to another

---

[1] See Defendant's Exhibit B (ECF No. 14-4). PRA seems to imply it was licensed as a consumer lender *and* a sales finance company since 2015 (see PRA's br. at 5, ECF No. 14-1). This is partially untrue. After PRA collected from Mr. North, PRA became licensed as a consumer lender on February 2, 2018, and as a sales finance company on December 4, 2015. *See* Exhibits A and B to Kim Decl.

(including any subsidiary or affiliate) and then no longer be governed by the NJCFLA. But the penalty provision makes clear that the NJCFLA covers collection. The resulting loophole would create an end run around the legislature's determination that consumer lenders need to be regulated.

## II.   THE EQUITABLE DEFENSE OF ENTIRE CONTROVERSY OR RES JUDICATA IS NOT SUPPORTED BY THE ALLEGATIONS OF THE COMPLAINT.

This is a motion for judgment based on the pleadings. PRA's arguments must show support for its arguments in the complaint. PRA itself notes that there is no allegation "that PRA ever filed a civil collection complaint against Plaintiff Todd North." *See* Defendant's Brief at 23, n.3; ECF No. 14-1. Yet, PRA proceeds to argue that the entire controversy or res judicata bars his claims. Without a prior action neither defense can be established.

### A. The Claims Are Not Barred By The Entire Controversy Doctrine.

If there was a court action, whether any of North's claims are barred by the entire controversy rule requires a factual determination of whether it is equitable to apply the doctrine. The New Jersey Supreme Court recently reiterated:

> the entire controversy doctrine "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Dimitrakopoulos, 237 N.J. at 114, 203 A.3d 133 (quoting Nicastro, 201 N.J. at 125, 988 A.2d 90). "[A] court should not preclude a claim under the entire controversy doctrine if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 119, 203 A.3d 133.

Page **8** of 35

*Bank Leumi USA, v. Kloss*, 233 A.3d 536, 541, 243 N.J. 218, 227–28 (2020).

Given it is an equitable doctrine, resolving the fairness and other factual issues required to determine whether it applies is not possible by a review of the Plaintiff's Complaint. In deciding whether to apply the entire controversy doctrine, the primary or "polestar" concern is fairness. It has been described as a pillar that should guide decisions on whether to apply the entire controversy doctrine. *Prevratil v. Mohr*, 145 N.J. 180, 190 (1996) ("Thus, equitable considerations can relax mandatory-joinder requirements when joinder would be unfair. *See ibid.* (noting that doctrine does not apply to bar component claims that are 'unknown, unarisen, or unaccrued at the time of the original action'))."

In *Prevratil*, the Supreme Court remanded an action to the trial court to determine if the application of the doctrine was fair. The remand was made despite an evidentiary record in that case that determined that there was "ample evidence" that Prevratil knew about potential claims that could have been asserted in the prior action and Prevratil had consulted a lawyer about the claims.

In this case, PRA asks this Court to apply the entire controversy doctrine after noting there was no collection lawsuit alleged. Even if there was a prior collection lawsuit, there is no evidence before this Court to determine what, if any, knowledge North had of the claims he has asserted. This is not surprising because the issue is raised as a defense in a motion for judgment on the pleadings. There

was nothing in the North's Complaint that addressed North's knowledge. Yet, whether North had a lot, a little or no knowledge concerning these claims against PRA based on PRA's unlicensed status can be a significant factor in determining the fairness of applying the doctrine. Even if North had knowledge of the claims, that does not resolve the issue. In *Prevratil v. Mohr* the court remanded the action even when there was "ample evidence" that the plaintiff knew about potential claims and had consulted a lawyer about the claims.

But if this Court does impute that North had or should have had knowledge to determine the fairness issue, it should be weighed against PRA's knowledge for any fairness analysis. Any presumption of knowledge must also apply to PRA. PRA's business is collecting allegedly defaulted debts. It has added incentives and reasons to know the laws that may regulate its business activities. There is no dispute that it never disclosed its unlicensed status to North. It is no different than comparing any professional to a client; the professional is more likely to be aware of licensing requirements than the client. How many times has the court asked lawyers before it whether they had a license to practice law? It is commonplace to assume that a person holds any necessary license to act.

Balancing these facts, on one side of the scale you have a lay person and on the other side of the scale is a sophisticated entity, who is operating a business that engages in debt collection. Any determination of fairness requires discovery to

determine how the scale should be balanced. North contends that the scales of justice will favor him.

In *Cafferata v. Peyser*, 597 A.2d 1101, 1103, 251 N.J. Super. 256, 260 (App. Div. 1991), the trial court barred Cafferata's claim based on the entire controversy doctrine. The Appellate division reversed that decision notwithstanding that Cafferata could have raised malpractice claims in a prior action but failed to do so and the trial court found he had "sufficient knowledge" of the malpractice claim. The appellate court held that his belief that something was wrong "hardly indicates requisite knowledge, and he did not in fact consult an attorney until some months following the settlement." *Id.*

Thus, even if the Court determined that North had knowledge of the claims, that does not resolve the issue. In *Prevratil v. Mohr*, the court remanded the action even when there was "ample evidence" that the Plaintiff knew about potential claims and had consulted a lawyer about the claims.

### B. The Claims Are Not Barred By Res Judicata.

As noted above, PRA states that there is no court action by PRA against North that was identified in the Complaint. Since res judicata requires a final judgment, there is no basis set forth in the Complaint upon which the court may find that North's claims are barred by res judicata. The res judicata law to be applied is New Jersey law. *Greenleaf v. Garlock, Inc*., 174 F.3d 352, 357 (3d. Cir.

1999) ("To determine the preclusive effect of Greenleaf's prior state action we must look to the law of the adjudicating state.")

The New Jersey Supreme Court explained in *Culver v. Insurance Co. of N. Am.*, 559 A.2d 400, 404–05, 115 N.J. 451, 460 (1989) what is required for the application of res judicata for a New Jersey judgment:

> Where the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second. 'The rule precludes parties from relitigating <u>substantially the same cause of action</u>.' *Kram v. Kram*, 94 N.J. Super. 539, 551, 229 A.2d 285 (Ch. Div.), *rev'd on other grounds*, 98 N.J. Super. 274, 237 A.2d 271 (App. Div.1967), *aff'd*, 52 N.J. 545, 247 A.2d 316 (1968).
>
> The application of res judicata doctrine <u>requires substantially similar or identical causes of action</u> and issues, parties, and relief sought. *Eatough v. Board of Medical Examiners*, 191 N.J. Super. 166, 173, 465 A.2d 934 (App. Div.1983); *Constant v. Pacific Nat'l Ins. Co.*, 84 N.J. Super. 211, 216, 201 A.2d 405 (App. Div. 1964).

(emphasis added)

In *McNeil v. Legislative Apportionment Com'n of State*, 828 A.2d 840, 858–59, 177 N.J. 364, 395 (2003), the New Jersey Supreme Court again addressed the doctrine of res judicata and while it noted that all theories are covered if not raised, but the doctrine only applies to the same, single claim:

> [C]auses of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence. If, under various theories, a litigant seeks to remedy a single wrong, then that litigant should present all theories in the first action. Otherwise, theories not raised will be precluded in a later action.

PRA's claims in the prior action sought to enforce North's alleged obligations from an agreement between North and a third party relating to a credit account. North's claim here involves the legality of PRA's alleged acquisition of the debt. They present distinct issues and claims that arise out of different transactions and occurrences. They are not merely different theories based on the same transaction and occurrence.

### C. Application Of These Equitable Doctrines Is Not Fair Under These Circumstances And PRA's Unclean Hands Prevent It From Raising Equitable Defenses.

Both entire controversy and res judicata are equitable doctrines. "The entire controversy doctrine, however, is constrained by principles of equity." *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C.*, 203 A.3d 133, 138, 237 N.J. 91, 99 (2019). Res judicata is also constrained by equity and "[e]ven where these requirements are met, the doctrine, which has its roots in equity, will not be applied when it is unfair to do so." *Pace v. Kuchinsky*, 347 N.J. Super. 202, 215, 789 A.2d 162, 171 (App. Div. 2002) (citing and collecting cases). The allegations of North's Complaint, that controls the analysis of PRA's motion, includes the following allegations:

> 2.     Plaintiff and the putative class members are New Jersey consumers against whom Defendants have unlawfully enforced consumer debts after unlawfully taking assignment of them without a sales finance company or consumer lending license.

18.     In the course of its business, Defendants have enforced its assigned accounts against New Jersey consumers through collection letters, lawsuits, and post-judgment collection efforts.

19.     Significant amount of these accounts are "retail charge accounts" as defined at N.J.S.A. 17:16C-1(r).

20.     By purchasing and taking assignment of the accounts, Defendants acted as a "sales finance company" as defined at N.J.S.A. 17:16C-1(f).

21.     By purchasing, taking assignment of, and/or enforcing the accounts, Defendants engaged in the "consumer loan business" as defined at N.J.S.A. 17:11C-2.

22.     During all times relevant to this action, Defendants were not licensed as a "sales finance company" or a "consumer lender" pursuant to the CFLA, at N.J.S.A. 17:11C-3.

28.     Defendants purchased the pool of defaulted consumer accounts, including the WebBank/Fingerhut Account, for pennies on the dollar.

29.     Upon information and belief, after Defendants purchased the pool of defaulted consumer accounts, Defendants unlawfully assessed interest on the accounts.

30.     On or around March 30, 2015, the Account was placed with Defendants.

31.     In an attempt to collect the WebBank/Fingerhut Account, Defendants reported the account to the three major credit reporting agencies.

32.     Defendants commenced the collection activities against Plaintiff, including dunning Plaintiff, when it was not properly licensed to do so under the New Jersey Consumer Finance Licensing Act or any other New Jersey consumer lending statute.

36.     Defendants' enforcement of the WebBank/Fingerhut Account was unauthorized and unlawful because Defendants did not

have a license to engage in business as a "sales finance company" or a "consumer lender" pursuant to the CFLA, at N.J.S.A. 17:11C-3.

37.    The WebBank/Fingerhut Debt was void upon assignment to Defendants, pursuant to N.J.S.A. 17:11C-33(b).

Plaintiff's Complaint, ¶¶ 2, 18-22, 28-32 and 36-37.

As noted above, this Court has previously held that collection of debts without the required licenses sets forth claims under consumer protection laws such as the Fair Debt Collection Practices Act. *Veras v. LVNV Funding, LLC*, No. 13-1745-RBK-JS, 2014 WL 1050512, at *4 (D.N.J. March 17, 2014); *Lopez v. Law Offices of Faloni & Associates, LLC*, No. 16-cv-01117-SDW-SCM, 2016 WL 4820629, at *5 (D.N.J. Sept. 14, 2016).

PRA was acting illegally when it collected from North. Yet, even if North was sued, North did not know that PRA was acting illegally and he did not have representation to make such determinations. It is not fair to foreclose his ability to assert his claims for PRA's unlicensed activities because PRA was able to engage in debt collection without disclosing its unlicensed status to North.

Also, these facts support a finding that PRA, having violated licensing laws, comes before the Court with unclean hands. A Defendant must have clean hands to raise an equitable defense. A party must have clean hands to raise an equitable defense:

The essence of [the unclean hands] doctrine, which is 'discretionary on the part of the court,' *Heuer v. Heuer,* 152 N.J. 226, 238, 704 A.2d

913 (1998), is that '[a] suitor in equity must come into court with clean hands and he must keep them clean after his entry and throughout the proceedings.' *A. Hollander & Son, Inc. v. Imperial Fur Blending Corp.,* 2 N.J. 235, 246, 66 A.2d 319 (1949). 'In simple parlance, it merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit.' *Faustin v. Lewis,* 85 N.J. 507, 511, 427 A.2d 1105 (1981).

*Borough of Princeton v. Board of Chosen Freeholders of County of Mercer*, 169 N.J. 135, 158 (2001).

Under the facts alleged by North, application of either equitable doctrine would be unfair and PRA is not entitled to raise the equitable defenses to avoid responsibility for its unlicensed actions.

## III.  THE CONSUMER FRAUD ACT APPLIES TO ACTS "IN CONNECTION WITH THE SALE . . . OR WITH THE SUBSEQUENT PERFORMANCE" AND INCLUDES ASSIGNEES WHO ARE SUBJECT TO THE SAME LIMITS APPLICABLE TO ITS ASSIGNOR.

The Courts have consistently held the CFA is remedial and should be broadly construed to effect its purposes. *Lee v. Carter-Reed Co., L.L.C.,* 203 N.J. 496, 522 (2010) ("Because it is 'remedial legislation,' the CFA is 'construe[d] liberally to accomplish its broad purpose of safeguarding the public.' (citation omitted); *Lettenmaier v. Lube Connection, Inc*., 162 N.J. 134, 139 (1999) ("Because it is a remedial statute, its provisions are construed liberally in favor of the consumer to accomplish its deterrent and protective purposes."). The CFA applies to:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent     that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid . . . .

N.J.S.A. 56:8-2.

The CFA applies to the sale of credit. *Lemelledo v. Beneficial Management Corp. of America*, 150 N.J. 255, 265 (1997) ("By its terms, the CFA is applicable to the provision of credit."). In *Jefferson Loan Co., Inc. v. Session*, 397 N.J. Super. 520, 533 (App. Div. 2008), the Appellate Division held that the act applied to an assignee of a credit contract and the assignee acts in connection with "the subsequent performance of the contract"—collection of the debt. *See also Pollitt v. DRS Towing, LLC*, No. 10-1285-AET, 2011 WL 1466378, at *6 (D.N.J. April 18, 2011) ("as an assignee, Wachovia would be subject to the CFA to the extent that any of its practices constituted an unlawful act under the CFA."). *Pollitt* also criticized *Hoffman v. Encore Capital Group, Inc.*, No. A-3008-07T1, 2008 N.J. Super. Unpub. LEXIS 1627, 2008 WL 5245306, at *3 (N.J. Super. Ct. App. Div. Dec. 18, 2008), as "not particularly helpful, given its failure to address Jefferson Loan, or otherwise to explain why purchasers of defaulted debt should be treated differently from purchasers of pre-default debt such as the assignee in Jefferson

Loan. *Pollitt*, 2011 WL 1466378, at n.5. Logically, since the CFA applies to a sale of credit, an assignee of the credit contract is also subject to the CFA.

The New Jersey Supreme Court held that "[w]e roundly reject defendants' argument that the collection activities of a servicing agent, such as Wilshire, do not amount to the 'subsequent performance' of a loan, a covered activity under the CFA." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1118, 207 N.J. 557, 582 (2011). *Gonzalez* did not involve any participation in the underlying extension of consumer credit either but only to subsequent performance (post-transaction activity). PRA does not address this binding precedent or this District's decisions holding the CFA applies to the subsequent performance thereof.[2] *See Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-10025-BRM-DEA, 2018 U.S. Dist. LEXIS 119417, at *14 (D.N.J. July 16, 2018) (attempt to collect storage costs after repossession of the vehicle covered by the CFA "even if that party is not the assignee of the loan") (quoting *Pollitt*); *Rosenzweig v. Transworld Sys., Inc.*, No. 16-227-JMV, 2016 U.S. Dist. LEXIS 127928, at *8 (D.N.J. Sept. 20, 2016) (allowing leave to amend to add, *inter alia*, CFA claim against a debt collector);

_____

[2] PRA is familiar with the CFA and its applicability. *See, e.g.*, *Panico v. Portfolio Recovery Assocs., LLC*, 879 F.3d 56, 60 (3d Cir. 2018) ("Departing from that precedent would also have the effect of eliminating the protections of the FDCPA, NJCFA, and other state statutes intended to protect debtors and regulate debt collection.").

*Whittingham v. Mortg. Elec. Registration Servs.*, No. 06-3016-RBK, 2007 WL 1456196. 2007 U.S. Dist. LEXIS 33476 at *23-24 (D.N.J. May 15, 2007) (CFA applied to mortgage servicer's (HSBC Mortgage Services) debt collection activities). The conclusion in *Gonzalez* is consistent with the language of the CFA that it applies to any deception "in connection with the sale [including] with the subsequent performance . . . ."

The Missouri Supreme Court in *Conway v. CitiMortgage, Inc*., 438 S.W.3d 410, 415 (Mo. 2014) specifically addressed whether the Missouri law that prohibited "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise" (similar to New Jersey's CFA that applies to "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . .") applied to collections by any person and was not limited to the original creditor. The Court focused on the use of the term "in connection with" in the statute. The same term that appears in New Jersey's CFA. The *Conway* Court relied on the term's ordinary meaning and held that "[a] party's right to collect a loan is part of that sale and is, therefore, 'in

connection with' the loan." It found that the consumer had the right to assert a claim against CitiMortgage even though it was not an original party to the contract. [3] It is also important to note that the Missouri statute did not include the language added to New Jersey's CFA that extends the law to subsequent performance of the contract.

PRA cites the March 22, 2011 decision in *Chulsky v. Hudson Law Offices, P.C.,* 777 F. Supp. 2d 823, 847 (D.N.J. 2011), that did not have the benefit of the later *Gonzalez v. Wilshire* decision, concluded the CFA does not cover the debt collection activities of a third party that purchases consumer debt. In reaching its decision, the court did look to other states that had consumer protection laws but in conducting that review the court did not consider Missouri's Merchandising Practices Act that is virtually identical law to New Jersey's CFA as discussed above.

*Chulsky* is not binding precedent. Respectfully, its decision is not consistent with the interpretation applied to a remedial law like the CFA. The *Conway*

---

[3] Ironically, in issuing its decision in *Conway*, the Supreme Court overturned a lower court appellate decision which held that the law did not allow claims against this same defendant, PRA, under Missouri's CFA law because it was a debt buyer. The decision overturned was *State ex rel. Koster v. Portfolio Recovery Associates, LLC*, 351 S.W.3d 661 (Mo. App. 2011). *See Conway* 438 S.W.3d at 415.

Court's analysis is also not binding precedent on this court but its rationale is

persuasive:

> Given that the MMPA was enacted to supplement the common law
> definition of fraud, there is no compelling reason to interpret 'in
> connection with' to apply only when the entity engaged in the
> misconduct was a party to the transaction at the time the transaction
> was initiated as *Professional Debt* and *Portfolio Recovery Associates*
> require. Even if the loan servicer was not an original party when the
> lender and borrower agreed to the services and responsibilities each
> would perform, enforcing the terms of the loan is in connection with
> the ongoing sale of the loan, as discussed above. Because a loan is an
> ongoing transaction, loan collection procedures, whether initiated by a
> loan originator or a loan servicer, are done "in connection with" the
> original procurement of the loan.

*Conway*, 438 S.W.3d at 415–16.

Finally, *Chulsky* did not decide whether or not the CFA would apply if it

was based on a violation of another New Jersey law or the FDCPA finding that the

party before it did carry its burden:

> Lastly, Plaintiff appears to argue that Hudson Law's alleged violation
> of New Jerseys' Professional Services Corporation Act and the
> FDCPA may constitute independent violations of the NJCFA.
> Because I conclude that the NJCFA does not encompass claims
> brought against debt buyers, I do not reach this argument. [] In any
> event, Plaintiff has not provided the Court with any case law
> supporting her proposition that an alleged violation of the PSCA or
> FDCPA acts also constitutes a violation of the NJCFA. It is not the
> Court's obligation to flesh out Plaintiff's undeveloped argument.
> Accordingly, Plaintiff's NJCFA claim is dismissed.

*Chulsky v. Hudson Law Offices, P.C.*, 777 F.Supp.2d 823, 848 (D.N.J. 2011)

PRA also claims that it cannot be held liable based on the decision in *Nicholls v. Portfolio Recovery Associates, LLC,* No. 09-5714-GEB, 2010 WL 1257738 (D.N.J. March 29, 2010). In *Nicholls*, the court first relied on an earlier federal decision, *Joe Hand Promotions, Inc. v. Mills*, 567 F.Supp.2d 719 (D.N.J. 2008). The *Joe Hand* decision was based on the facts before it. The demand for payment to the defendant arose from the use of a television program for which plaintiff had an exclusive license. There was no service. Here, the demand for payment was in connection with the sale of a service—a credit transaction—which is recognized as a "sale" of services. *Lemelledo, supra.*

The important factual distinction in *Joe Hand* was recognized in *Mathiesen v. Moleski*, No. A-0365-10T3, 2011 WL 3516927, at *9 (N.J. Super. Ct. App. Div. Aug. 12, 2011), an opinion that post-dated *Nicholls* and affirmed a claim under the CFA based on efforts to collect a debt in connection with a sale. The *Mathiesen* court also explained the factual distinction of another case relied on in *Nicholls*, *Boyko v. Am. Int'l Group, Inc.*, 2009 U.S. Dist. LEXIS 119339, 2009 WL 5194425 (D.N.J. Dec. 23, 2009). *Boyko* a involved debt collection agency separate and distinct from the seller of any merchandise.[4] Here, PRA is claiming rights in

---

[4] The decision in *DepoLink Court Reporting & Litigation Support Services v. Rochman*, 430 N.J. Super. 325 (App. Div. 2013) only addressed third party collection activities and does not apply here.

connection with the sale of credit to North, it is not claiming to be a collection agency.[5]

PRA also cites the decision in *Katz v. Ambit Northeast, LLC*, No. 3:20-cv-1289-BRM-DEA, 2020 WL 5542780, at *4 (D.N.J. Sept. 16, 2020) that held that a CFA claim can be established by:

> [t]he third category of unlawful acts consists of violations of specific regulations promulgated under the [NJCFA]." *Cox*, 647 A.2d at 462. 'In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations.' *Id.* (citation omitted). Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the NJCFA can give rise to a NJCFA claim. See *Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090, at *5 (N.J. Super. Ct. App. Div. June 22, 2006); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 696 A.2d 546, 552-56 (N.J. 1997). However, the NJCFA does not create strict liability for violations of other statutes, regulations, or rules not promulgated under the NJCFA. See *Henderson*, 2005 WL 4127090, at *5.

PRA zeroes in on the *Henderson v. Hertz Corp*, 2005 WL 4127090, at *3 (N.J. Super. Ct. App. Div. 2006), an unpublished decision cited in *Katz*, but that unpublished decision does not help PRA because the reason that *Henderson* held a violation of the Insurance Producer Licensing Act ("IPLA") could not support a

---

[5] The *Nicholls* decision also cited the decision in *Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462, 475 (D.N.J. 2007) but that decision did not reject the application of the CFA in connection with a sale but found that a commercial entity qualified as a consumer and had a viable CFA claim.

CFA claim was because "although the contract was illegal under IPLA, the statute did not make the contract unenforceable." In contrast, here the NJCLA specifically states that contracts made in violation of the law are "void." N.J.S.A. 17:11C-33(b). Therefore, the distinction as to why the IPLA did not support a CFA violation does not apply here.

The underlying illegal behavior involving credit here is consistent with the decision in *Perez v. Rent A Center Inc.*, 892 A.2d 1255, 1275, 186 N.J. 188, 220 (2006), where the Supreme Court held that a violation of the retail installment sales act provided a predicate act for a CFA claim. The court reiterated its earlier rulings that said the focus for determining whether a violation of another law could be the basis for a claim under the CFA is whether or not there was "a direct and unavoidable nature" of a conflict between the regulation of the law and the CFA. Like *Rent A Center*, PRA does not identify any conflict between the NJCFLA and the CFA.

Finally, PRA argues that the decision in *Wilson v. Deutsche Bank Nat. Trust Co.*, No. A-3327-12T3, 2014 WL 1716093, at *4 (N.J. Super. Ct. App. Div. May 2, 2014), an unpublished *pro se* action, also establishes that "a lender's violation of the New Jersey Fair Foreclosure Act (FFA), another state law consumer protection statute, was not a *per se* violation of the CFA and could not create a basis for liability." PRA's Brief at 14-15, ECF No. 14-1. However, the broad statement is

not supported by the facts or holding. What the *Wilson* court held was that it could not decide whether a defective notice of intention to foreclose ("NOI") could support a fraud claim because the Wilson's failed to "provide us with the allegedly deficient NOI which prevents us from determining if it was defective."[6] The court did state that if it was provided, "such a defect would not generally rise to the level of fraud or illegality required by the CFA." It was not blanket ruling that violations of statutes can never support a CFA claim. Indeed, the Supreme Court held that violations of statutes can support a CFA claim so long as there is not a conflict of a "direct and unavoidable nature." *Perez v. Rent A Center Inc.*, *supra*.

CFA claims may be based on the collection of services sold since the collection of the debt is in connection with the sale.

## IV. NORTH'S CLAIMS BASED ON MISREPRESENTATIONS, UNLAWFUL CONDUCT AND OMISSIONS ARE ADEQUATELY PLED.

Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462, 138 N.J. 2, 17 (1994). And, "[u]nlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the CFA can give rise to a CFA claim." *Pierre-Charles v. Consumer Portfolio Servs.*, No. 17-10025-BRM-

---

[6] PRA also cites the unpublished decision in a pro se action, *Hager v. Selene*, No. 19-13650-FLW, 2020 U.S. Dist. LEXIS 30224 (D.N.J. Feb. 19, 2020) which cited to *Wilson* but did not provide any further analysis of the issue.

DEA, 2018 U.S. Dist. LEXIS 119417, at *11 (D.N.J. July 16, 2018) (collecting

cases). The claims here are based on misrepresentations, omissions and violations

of specific licensing laws that provide acts in contravention of the licensing law are

void. See N.J.S.A. 17:11C-33(b). The New Jersey courts have permitted CFA

claims based on violation of other laws. *See, e.g.*, *Perez, supra.*

PRA does not claim it does not have notice of the claims against it based on

its unlicensed activities. The Complaint makes that very clear. Paragraphs 75 and

76 alleges:

> 75.    Defendants committed unconscionable commercial practices,
> deception, fraud, false promises, false pretenses and/or
> misrepresentations in direct violation of the CFA at N.J.S.A. 56:8-2
> by:
>
>> a. Misrepresenting in its dunning letters that it had the legal
>> right to collect on the account when it lacked the proper license
>> to do so;
>>
>> b. Filing civil collection complaints when it lacked the proper
>> license to do so;
>>
>> c. Representing, explicitly or impliedly, in the collection
>> complaints and related communications with Plaintiff and those
>> similarly situated that it was properly licensed giving it the right
>> to collect and file the actions such that the collection complaints
>> could be properly filed and maintained; and
>>
>> d. Demanding and accepting payments from Plaintiff and those
>> similarly situated on the accounts and the judgments obtained
>> from actions filed when the Defendants lacked the proper
>> license to do so;
>
> 76.    As a result of Defendants' unlawful actions, Plaintiff and the
> Subclass members suffered ascertainable loss from Defendants' CFA

violations in the amount monies collected, and/or paid on the void accounts, entitling them to treble damages under the CFA, at N.J.S.A. 56:8-19.

PRA has sufficient notice that North claims that PRA is liable for collection activities that began when it was unlicensed. PRA's motion seems to complain it needs more for the sake of more. As one court stated:

> [T]he law does not require specificity just for specificity's sake. The level of particularity required is sufficient details to put Defendants on notice of the 'precise misconduct with which they are charged.' *Smajlaj, et al. v. Campbell Soup Co.,* 782 F.Supp.2d 84, 104 (D.N.J. 2011) (quoting *Franulovic v. Coca–Cola Co.,* 07–539, 2007 WL 3166953, *11, 2007 U.S. Dist. LEXIS 79732, *11 (D.N.J. Oct. 25, 2007)). In other words, '[t]o satisfy the specificity requirement of Fed.R.Civ.P. 9(b) the pleadings must state what the misrepresentation was, what was purchased, when the conduct complained of occurred, by whom the misrepresentation was made, and how the conduct led plaintiff to sustain an ascertainable loss.' *Id.*

*Francis E. Parker Mem'l Home, Inc. v. Ga.-Pacific LLC*, 945 F.Supp.2d 543, 558 (D.N.J. 2013).

The same allegations and others in the Complaint explain both the omissions and law upon which North support his claims under the CFA. It is also true that this action was filed in state court and now removed for a second time, and therefore, if the Court finds there are deficiencies under the federal rules now being applied to a state court complaint, leave to amend would be appropriate, not dismissal.

## V.   THE PLAINTIFF HAS STATED A CLAIM FOR UNJUST ENRICHMENT BASED ON DEFENDANT COLLECTING MONEY FROM HIM WHEN IT WAS NOT LICENSED TO DO SO.

Case law recognizes a claim for unjust enrichment and sets forth the elements. In *Goldsmith v. Camden Cty. Surrogate's Office,* 408 N.J. Super. 376, 382 (App. Div. 2009) (quoting *Cty. of Essex v. First Union Nat'l Bank,* 373 N.J. Super. 543, 549–50 (App. Div. 2004), *aff'd and remanded* 186 N.J. 46 (2006)), *certif. denied,* 200 N.J. 502 (2009) held:

> Plaintiff also argues that the trial court improperly dismissed his unjust enrichment claim. To establish a claim of unjust enrichment, a plaintiff must show that the 'defendant[s] received a benefit and that retention of that benefit without payment would be unjust.'

*Kontos v. Robbins*, No. A-3288-14T3, 2016 N.J. Super. Unpub. LEXIS 1555, at *9 (Super. Ct. App. Div. July 5, 2016) (quoting *Goldsmith v. Camden Cty. Surrogate's Office*).

Plaintiff's claim is based on money collected based on PRA's alleged purchase of a debt that the Plaintiff contends is void pursuant to the statute. A claim for unjust enrichment in this situation is well recognized. *See* Restatement (Third) of Restitution and Unjust Enrichment, § 18 (2011) ("A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.")

### A.  There Are Factual Issues As To Whether There Is A Contract.

PRA argues there is a contractual relationship between North and PRA to contend that the unjust enrichment claim fails. However, there are factual issues as to whether PRA (i) if it has any rights to any contract with the Plaintiff and (ii) even if there is an assignment whether it is legally enforceable since PRA was unlicensed when it was allegedly made. See Plaintiff's Complaint, ¶ 1, ("accounts became void and unenforceable . . . ."); ¶ 3 ("credit account contracts are void and unenforceable . . . .") and ¶ 37 "void upon assignment . . . ."

The licensing law provides:

A consumer lender who violates or participates in the violation of any provision of section 3[7] . . . <u>shall be guilty of a crime of the fourth degree</u>. A contract of a loan not invalid for any other reason, in the <u>making or collection of which any act shall have been done which constitutes a crime of the fourth degree under this section, shall be void and the lender shall have no right to collect or receive any principal, interest or charges</u> unless the act was the result of a good faith error, including a good faith error made as a result of a licensee's acting in conformity with a rule or regulation of the commissioner which is later held to be invalid or in violation of any provision of this act by a judgment of a court of competent jurisdiction, and the licensee notifies the borrower of the error within 90 days after discovering it and makes adjustments in the account necessary to assure that the borrower will not be required to pay any interest, costs, or other charges which aggregate in excess of the charges permitted under this act.

---

[7] *N.J.S.A.* 17:11C-3(a) provides: "No person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act."

N.J.S.A. 17:11C-33 (emphasis added).

PRA's claim that it has any "contract" with the Plaintiff may be barred by this law. And, in any event there are facts to be resolved as to PRA's interest, if any, in any contract with Plaintiff. Plaintiff avers in ¶ 23 only that "Defendants <u>allegedly</u> purchased and attempted to take assignment of a WebBank/Fingerhut account that had <u>allegedly</u> been extended to Plaintiff . . . ." (emphasis added) and in ¶ 27 that "Defendants allegedly purchased a pool of defaulted accounts . . . ." The factual issue as to whether Defendant actually purchased any accounts cannot be resolved on a 12(c) motion.

Plaintiff also alleges that the Defendant engaged in collection efforts in 2015 which resulted in some payments on or about May 18, 2015, June 16, 2015, and July 16, 2015. See Plaintiff's Complaint, ¶¶ 30, 32 and 33. Therefore, the licensing information provided by PRA for 2021 (Exhibit B to their Motion, ECF No. 14-4) sheds no light on its licensing status in 2015.[8] This information does not resolve any of the issues raised by the Plaintiff's Complaint relating to actions taken in 2015.

---

[8] To the extend PRA implies it was licensed as a consumer lender and a sales finance company *before* unlawfully collecting from Mr. North (see PRA's br. at 5, ECF No. 14-1), this is untrue. PRA became licensed as a consumer lender on February 2, 2018, and as a sales finance company on December 4, 2015 (Exhibit A to Kim Decl.), only after PRA collected from Mr. North.

The failure to be licensed when it began collecting from North raises claims because the NJCFLA prohibits any person from engaging in activities covered by Act without a license. N.J.S.A. 17:11C-3(a). The provisions of the Act may not be waived. N.J.S.A. 17:11C-44. The NJCFLA also provides that the contract is void.

But, PRA claims that the Court should accept its position that there is no unjust enrichment because it claims under a contract between North and PRA's assignor. This ignores that by acting without a license, it had no legal right to be assigned the contract or collect any amount. § 17:11C-33(b). As explained by Comment e to Restatement (Third) of Restitution and Unjust Enrichment, §18, where the action is "legally unenforceable" (which describes unlawful debt collection) restitution most certainly *is* required: "The need to remedy this misapplication of legal process—so that the law not stultify itself by requiring what it has declared may not be required—constitutes an important reason for restitution that is independent of the individualized equities of the parties."

Putting the factual issues relating to whether there is a contract, the possible existence of a contract does not defeat Plaintiff's right to assert her unjust enrichment claim at this juncture. *In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517, 544 (D.N.J. 2004) ("Plaintiffs, however, are clearly permitted to plead alternative theories of recovery. Consequently, it would be premature at this stage of the proceedings to dismiss the Indirect Purchasers' and the Commonwealth's

unjust enrichment claims on this basis."). There is no prohibition on alternative

pleading under the Federal Rules. Rule 8(d)(2) and (3) specifically allows a party

to plead alternatives:

> (2) *Alternative Statements of a Claim or Defense*. A party may set out
> 2 or more statements of a claim or defense alternatively or
> hypothetically, either in a single count or defense or in separate ones.
> If a party makes alternative statements, the pleading is sufficient if
> any one of them is sufficient.

> (3) *Inconsistent Claims or Defenses*. A party may state as many
> separate claims or defenses as it has, regardless of consistency.

Plaintiff is entitled to plead this claim.

Whether the contract Defendant points to remained valid after being

assigned to Defendant, an unlicensed entity, remains at best, an open issue in this

case. Therefore, Plaintiff may properly keep his unjust enrichment claim as an

alternative claim.

After contending there is no cause of action, PRA next claims that North has

not stated the elements of a claim for unjust enrichment or that a claim for unjust

enrichment is not permissible because there is a contract. "To prove a claim for

unjust enrichment, a party must demonstrate that the opposing party 'received a

benefit and that retention of that benefit without payment would be unjust.'"

*Thieme v. Aucoin-Thieme*, 227 N.J. 269, 288 (2016). North has alleged all of the

required elements. See Plaintiff's Complaint, ¶¶ 78-82. North submits he has

adequately alleged facts to support his claim that PRA was unjustly enriched by

receiving her (and others) funds when it was not licensed. If the Court does not agree, then she should be granted leave to amend her complaint.

Last, PRA says that there can be no unjust enrichment because North owed the money anyway. But as set forth in the complaint, whether he owes PRA any money rests on what he contends is an illegal and unenforceable assignment. If North prevails on that issue, PRA is not owed any amount since its transaction is void. His alternative claim for unjust enrichment should not be dismissed.

## VI. PLAINTIFF MAY ASSERT A CLAIM UNDER THE NEW JERSEY DECLARATORY JUDGMENT ACT.

Similar to its argument about the claim of unjust enrichment, PRA alleges there is no independent claim for a declaratory judgment. The statute authorizing declaratory judgments, the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, states:

> All courts of record in this state shall, within their respective jurisdictions, have power to declare rights, status and other legal relations, whether or not further relief is or could be claimed; and no action or proceeding shall be open to objection on the ground that a declaratory judgment is demanded.

> The enumeration in other sections of this article of the questions determinable and rights declarable in a proceeding brought under the provisions of this article does not limit or restrict the exercise of the general powers conferred by this section in a proceeding for declaratory relief, in which a judgment will terminate the controversy or remove an uncertainty.

N.J.S.A. 2A:16-52.

North seeks a determination as to whether or not the PRA had to be licensed under the NJCFLA. It matters to North. Since there is no claim it was licensed during the time frame at issue, then the alleged debt it claims is void. And, in turn, the judgments are void. If it is not cognizable as a separate cause of action, then the Court should allow an amended complaint raising it in his prayer for relief.

PRA also claims that a declaratory judgment to determine whether the judgments are void because of an alleged violation of the NJCFLA is improper. PRA ignores the plain language in the Declaratory Judgment Act, which specifically allows "[a] person . . . whose rights, status or other legal relations are affected by a statute . . . [to] have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status or other legal relations thereunder." N.J.S.A. 2A:16-53. Having his rights, status or legal relations determined as they may be affected by NJCFLA is allowed under the declaratory judgment act.

VII.   **NORTH SHOULD BE GRANTED LEAVE TO AMEND ANY DEFICIENCIES IN THE COMPLAINT.**

In accordance with Rule 15(a) of the Federal Rules of Civil Procedure, North should be allowed to amend the Complaint to cure any deficiencies. North can readily cure any problems with the Complaint by pleading additional facts. Generally, when a court dismisses a complaint under Rule 12(b)(6), the plaintiff should be provided the opportunity to amend the complaint to cure its identified

deficiencies A complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice. *La Porte Const. Co. v. Bayshore Nat. Bank*, 805 F.2d 1254, 1256 (5th Cir. 1986); *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010). The standard for dismissing a complaint with prejudice is high: dismissal with prejudice is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiencies. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *McLean v. U.S.*, 566 F.3d 391, 401 (4th Cir. 2009).

## CONCLUSION

PRA misrepresented to Mr. North that it lawfully took assignment of a debt when it was not licensed under New Jersey law. PRA then proceeded to take money from Mr. North which is prohibited by New Jersey law. Mr. North's claims to seek redress on behalf of himself and other New Jersey consumers should proceed.

Respectfully Submitted,

*s/Yongmoon Kim*
Yongmoon Kim, Esq.
KIM LAW FIRM LLC
*Attorneys for Plaintiff*

Dated: May 3, 2021