<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TODD M. NORTH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC; and JOHN DOES 1 to 10,<br><br>Defendants. | Case No. 2:20-cv-20190 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Portfolio Recovery Associates, LLC's ("Defendant") Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). (ECF No. 14.) Plaintiff Todd M. North ("Plaintiff") opposes the Motion. (ECF No. 17.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, Defendant's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of this Motion for Judgment on the Pleadings, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194,

1220 (1st Cir. 1996)). "The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6) motion." *Newton v. Greenwich Twp.*, Civ. A. No. 12-238, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012) (citing *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991)).

The Court previously summarized the facts underlying this dispute in a May 6, 2020 Opinion granting Plaintiff's first motion to remand (*see* 2:19-cv-17972-BRM-JAD, ECF Nos. 18–19) and denying Plaintiff's second motion to remand (*see* 2:20-cv-20190 BRM-JSA, ECF Nos. 19–20). The Court therefore includes an abbreviated statement of the factual and procedural history to the extent such background is relevant to the instant motion.

This case arises from Defendant's attempts to collect a debt owed by Plaintiff. (*See* ECF No. 1-1.) On August 6, 2019, Plaintiff filed a putative class-action Complaint (the "Complaint") in the Superior Court of New Jersey, Law Division, Essex County asserting three claims against Defendant for violations of the New Jersey Consumer Finance Licensing Act, N.J. Stat. Ann. § 17:11C, *et seq*. (the "Licensing Act"), the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq*. (the "CFA"), and unjust enrichment. (ECF No. 1-4 ¶¶ 55–83.)

Plaintiff defines the class and subclass as:

> Class: All natural persons with addresses in the State of New Jersey who are listed as the borrower or purchaser in an account assigned to Portfolio Recovery Associates, LLC, or any of its sister or parent entities, at any time prior to the date the respective entity obtained a license to engage in business as a "sales finance company" or a "consumer lender" pursuant to the CFLA, at N.J.S.A. 17:11C-3.
>
> Subclass: All members of the Class who paid any money or from whom Portfolio Recovery Associates, LLC, or any of its sister or parent entities, directly or indirectly through its agents, collected any money on the assigned account.

(*Id.* ¶ 41.) Plaintiff alleges that, "[s]ometime prior to the date" the Complaint was filed, "Defendant[] allegedly purchased and attempted to take assignment of a WebBank/Fingerhut account ['WebBank/Fingerhut Account'] that had [] been extended to Plaintiff." (*Id.* ¶ 23.) The WebBank/Fingerhut Account was used for personal, family, or household purposes. (*Id.* ¶ 24.) Thereafter, Plaintiff defaulted on the WebBank/Fingerhut Account and Defendant purchased a pool of defaulted consumer accounts, including the WebBank/Fingerhut Account. (*Id.* ¶¶ 27–28.) On or around March 30, 2015, the WebBank/Fingerhut Account was placed with Defendant. (*Id.* ¶ 30.) Defendant commenced collection activities against Plaintiff, when it was not properly licensed to do so, by causing Plaintiff to make payments towards the WebBank/Fingerhut Account on or about May 18, 2015, June 16, 2015, and July 16, 2015. (*Id.* ¶¶ 32–33.) To date, and upon information and belief, Plaintiff alleges approximately $391 was wrongfully collected by Defendant. (*Id.* ¶ 34.) According to Plaintiff, "[a]s a result of Defendant['s] unlawful actions, Plaintiff [] suffered an ascertainable loss, specifically the amount [] Plaintiff paid towards the WebBank/Fingerhut [Account]." (*Id.* ¶ 35.) "During the six years prior to the date when Plaintiff's Complaint was filed, numerous New Jersey consumers made payments to Defendant[] for accounts assigned to Defendant[] when it was not properly licensed." (*Id.* ¶ 38.)

On September 13, 2019, Defendant first removed the action to federal court on grounds of diversity jurisdiction pursuant to 28 U.S.C. § 1332, which provides federal courts with jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." (2:19-cv-17972-BRM-JAD, ECF No. 1-2 ¶ 8.) On October 2, 2019, Plaintiff moved to remand the action to state court. (2:19-cv-17972-BRM-JAD, ECF No. 5.) On May 6, 2020, the Court granted Plaintiff's motion to remand, citing the amount in controversy requirement had not been satisfied. (2:19-cv-17972-BRM-JAD, ECF No. 18 at 5, "the

3

Court is not persuaded Portfolio Recovery has met its burden of showing the amount in controversy to be greater than the $75,000.00, which also is required by § 1332.")

On December 22, 2020, Defendant, for the second time, removed this action to federal court, alleging this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(11) ("CAFA") and arguing, *inter alia*, (1) CAFA's jurisdictional requirements have been satisfied; and (2) removal is timely. (ECF No. 1 at 3–6.) On January 21, 2021, Plaintiff filed a motion to remand arguing, *inter alia*, (1) Defendant's notice of removal is untimely as it was filed more than thirty days after it was aware the Court had CAFA jurisdiction; and (2) this Court lacks jurisdiction over this matter pursuant to the *Rooker-Feldman* doctrine. (ECF No. 2-1 at 12–19.) On February 16, 2021, Defendant filed an opposition to the motion to remand. (ECF No. 5.) On February 22, 2021, Plaintiff filed a reply in support of the motion to remand. (ECF No. 6.) On February 26, 2021, Defendant filed a motion for leave to file a sur-reply in opposition to the motion to remand (ECF No. 7), which, on March 30, 2021, the Court granted (ECF No. 11). On April 9, 2021, Defendant filed a Motion for Judgment on the Pleadings arguing, *inter alia*, (1) Plaintiff's Complaint fails to state any viable cause of action and (2) any cause of action against Defendant is barred by the entire controversy doctrine and/or *res judicata.* (ECF No. 14-1 at 13–28.) On May 3, 2021, Plaintiff filed an Opposition arguing, *inter alia*, (1) Plaintiff stated viable claims against Defendant; and (2) the entire controversy doctrine and/or *res judicata* are not applicable. (ECF No. 17.) On May 10, 2021, Defendant filed a Reply. (ECF No. 18.) On August 30, 2021, the Court found Defendant's removal timely and denied Plaintiff's motion to remand the action to the Superior Court of New Jersey. (*See* ECF No. 19 at 11.) Defendant's Motion for Judgment on the Pleadings is now properly before the Court.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Pursuant to Rule 12(c), the movant for judgment on the pleadings must establish: (1) that no material issue of fact remains to be resolved; and (2) the entitlement to judgment as a matter of law. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988)). In resolving a motion made pursuant to Rule 12(c), the Court must view the facts in the pleadings and the inferences therefrom in the light most favorable to the non-movant. *See id.*

Furthermore, even though a motion for judgment on the pleadings is appropriate after the pleadings have been closed, such a motion is reviewed under the same standards that apply to a motion to dismiss made under Rule 12(b)(6). *See Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)); *see also Muhammad v. Sarkos*, Civ. A. No. 12-7206, 2014 WL 4418059, at *1 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing *Turbe*, 938 F.2d at 428); *Gebhart v. Steffen*, 574 F. App'x 156, 157 (3d Cir. 2014).

## III. DECISION

Defendant argues Plaintiff's Complaint fails to allege any viable causes of action against Defendant, and therefore, the Complaint should be dismissed with prejudice. (ECF No. 14-1 at 9.) Specifically, Defendant argues: (1) the Complaint fails to state a claim for declaratory judgment or injunctive relief because Plaintiff does not have a private cause of action to enforce the

Licensing Act (*id.* at 13); (2) the CFA does not apply to Defendant (*id.* at 17); and (3) no viable unjust enrichment claim exists against Defendant (*id.* at 24). Finally, Defendant argues any cause of action against Defendant is barred by the entire controversy doctrine and/or *res judicata*. (*Id.* at 28.) The Court addresses each argument in turn.

    A.    The Licensing Act

Defendant contends Plaintiff's claim under the Licensing Act must be dismissed because, as Plaintiff does not appear to dispute, courts in this district have held that there is no private right of action for violations of the Licensing Act. (ECF No. 14-1 at 13.) Further, Defendant contends Plaintiff cannot seek to "circumvent the lack of a private right of action to enforce [the Licensing Act] by seeking declaratory relief under the Uniform Declaratory Judgments Act, N.J. Stat. Ann. 2A:16-62. (*Id.* at 15.) The Court agrees. *See Jubelt v. United N. Bankers, Ltd.*, Civ. A. No. 13–7150, 2015 WL 3970227, at *14 (D.N.J. June 30, 2015) (providing that "even if [p]laintiff had asserted illegal conduct under the [Licensing Act], there is no private right of action available under that statute"); *Veras v. LVNV Funding, LLC*, Civ. A. No. 13–1745, 2014 WL 1050512, at *7–9 (D.N.J. Mar. 17, 2014) (stating that "the [Licensing Act] does not contain a private cause of action" and declining to grant "[p]laintiff leave to amend this claim [because it] would be futile"). To be sure, because the Licensing Act does not contain a private right of action, Plaintiff cannot seek to enforce the Licensing Act directly or indirectly through the Uniform Declaratory Judgments Act. *See Excel Pharmacy Servs., LLC v. Liberty Mut. Ins.*, 825 F. App'x 65, 70 (3d Cir. 2020) ("But it is well settled that parties cannot bring a declaratory judgment action under a statute when there is no private right of action under that statute."); *Ass'n of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs., Inc.*, Civ. A. No. 6033-11T4, 2013 WL 5879517, at *5 (N.J. Super. Ct. App. Div. Nov. 4, 2013) (providing that "plaintiffs are not entitled to use the declaratory

6

judgment as a substitute for a private right of action"); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 709 (E.D. Pa. 2016) (finding that plaintiff "cannot use the Declaratory Judgment Act to seek relief for alleged violations of a statute that, in the first instance, does not provide her with either a private right or a private remedy"). The Court sees no reason to depart from those decisions, and Plaintiff's Licensing Act claim is dismissed with prejudice. *MacDonald v. CashCall, Inc*, Civ. A. No. 16-2781, 2017 WL 1536427, at *11 (D.N.J. Apr. 28, 2017), *aff'd*, 883 F.3d 220 (3d Cir. 2018).

Accordingly, Defendant's Motion for Judgment on the Pleadings as to the Licensing Act claim is **GRANTED with PREJUDICE**.[1]

### B. The CFA

Defendant maintains Plaintiff has failed to state a claim under the CFA. Specifically, Defendant contends the CFA is inapplicable to Plaintiff's claim because

> the CFA does not cover the debt collection conduct of a defendant debt buyer, such as [Defendant], which purchases a consumer's defaulted and non-performing debt obligation from a third-party, because the debt buyer (*i.e.*, [Defendant]) did not itself sell merchandise or real estate to the plaintiff-consumer nor is it involved with a continuing performance of the debt.

(ECF No. 14-1 at 17.) According to Defendant, Defendant's contacts with Plaintiff were

> not an offer to sell merchandise, nor did Plaintiff buy anything from [Defendant]. Plaintiff does not – and cannot – allege otherwise. Debt collection activities by a debt buyer, regarding accounts originating from a third party who may have sold merchandise are not

---

[1] The Court finds dismissal with prejudice is proper here because it is unlikely Plaintiff can further amend the complaint to cure the deficiencies under the Licensing Act claim. *Credico v. CEO Idaho Nat. Lab'y*, 461 F. App'x 78, 79 (3d Cir. 2012) (affirming District Court's dismissal of plaintiff's complaint "without . . . leave to amend as any amendment would have been futile"); *Redmond v. Fresh Grocers Store*, 402 F. App'x 685, 686 (3d Cir. 2010) (same); *IpVenture Inc. v. Lenovo Grp. Ltd.*, Civ. A. No. 11-588, 2013 WL 126276, at *3 (D. Del. Jan. 8, 2013) (choosing to dismiss claims with prejudice after dismissing the same allegations without prejudice in an earlier action because it was "clear that Plaintiff cannot satisfactorily amend its Complaint").

7

> unconscionable activities 'in connection with the sale' of merchandise.

(*Id.* at 19.) Further, Defendant claims Plaintiff failed to meet the heightened pleading standard set by Fed. R. Civ. P. 9(b) applicable to fraud claims. Plaintiff opposes arguing, *inter alia*, "since the CFA applies to a sale of credit, an assignee of the credit contract is also subject to the CFA." (ECF No. 17 at 26.) Therefore, according to Plaintiff, the CFA is applicable to a buyer of debt, like Defendant. Plaintiff also contends the Complaint advises Defendant of the basis for the CFA claim with "sufficiently particularity required by Rule 9(b)." (*Id.* at 12.) The Court finds *Pollitt v. DRS Towing, LLC*, Civ. A. No. 10-1285, 2011 WL 1466378, at *6 (D.N.J. Apr. 18, 2011), particularly helpful here.

In *Pollitt*, the court was tasked with answering whether an assignee of a credit account may be liable under the CFA for its own unconscionable commercial practices and activities in connection with the subsequent performances of a loan. *Pollitt*, 2011 WL 1466378, at *5. The court concluded that an assignee would be subject to the CFA to the extent that any of its practices constituted an unlawful act under the CFA. *Id.* at *6.

> The CFA states that it is unlawful for any person to use or employ
>
>> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[ ] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8–2.

The CFA defines "sale" to include "any sale, rental or distribution, offer for sale, rental or distribution[,] or attempt directly or indirectly to sell, rent or distribute[.]" N.J. Stat. Ann. § 56:8–

8

1(e). It defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" N.J. Stat. Ann. § 56:8–1(c). Further, it defines a "person" as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or *cestuis que trustent* thereof [.]" N.J. Stat. Ann. § 56:8–1(d).

To state a CFA claim, a plaintiff must show "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Ass'n v. Woodmont Builders*, 655 F. Supp. 2d 473, 503 (D.N.J. 2010) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).

The CFA is considered "remedial legislation," and courts therefore construe its prohibitions "liberally to accomplish its broad purpose of safeguarding the public." *Lee v. Carter–Reed Co., L.L.C.*, 4 A.3d 561, 577 (N.J. 2010) (citing *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004)). This broad construction is necessary because "the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud." *Lemelledo v. Beneficial Mgmt.*, 696 A.2d 546, 551 (N.J. 1997). Nevertheless, a court must "abide by the [CFA's] definitions that control the boundaries of the [CFA's] reach." *Lee v. First Union Nat'l Bank*, 971 A.2d 1054, 1059 (N.J. 2009).

Having addressed the CFA's scope, the question remains whether Plaintiff has adequately alleged that Defendant committed CFA violations. Plaintiff alleges Defendant engaged in unconscionable commercial practices, deception, fraud, false promises, and/or misrepresentations when Defendant "misrepresent[ed] in its dunning letter that it had a legal right to collect on the account when it lacked the proper license to do so," filed civil collection complaints when it lacked

9

the proper license to do so, represented "in the collection complaints and related communications" that "it was properly licensed giving it the right to collect and file [] actions," and "demand[ed] and accept[ed] payments from Plaintiff and those similarly situated on the accounts and the judgments obtained from actions filed when the Defendant[] lacked the proper license to do so." (ECF No. 1 ¶ 75.)

Taken together and accepting Plaintiff's pleadings as true as is required at this stage of the litigation, Plaintiff has asserted allegations that may establish a claim for CFA liability based on Plaintiff's allegation Defendant engaged in "unconscionable commercial practices." (*See* ECF No. 1-1 ¶¶ 70–76.) Indeed, the New Jersey Supreme Court has stated that "unconscionability is an 'amorphous concept obviously designed to establish a broad business ethic.'" *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (quoting *Kugler v. Romain*, 279 A.2d 640, 651 (N.J. 1971)). Where an alleged CFA violation consists of an "unconscionable commercial practice," the standard for unconscionability is a "lack of good faith, honesty in fact and observance of fair dealing." *Id.*

Next, the Court turns to whether Plaintiff's allegations meet Rule 9(b)'s particularity standard. To meet this standard, a plaintiff must plead claims with "sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged . . . . [T]he plaintiff must plead or allege the date, time and place" of the alleged fraud or unconscionable commercial conduct or "otherwise inject precision or some measure of substantiation" into the allegations. *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, Civ. A. No. 13–7738, 2015 WL 926221, at *9 (D.N.J. Mar. 4, 2015) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *MacDonald*, 2017 WL 1536427, at *12.

The Court finds Plaintiff has adequately plead fraud claims against Defendant by alleging that, among other things, after the WebBank/Fingerhut Account was placed with Defendant on or about March 30, 2015, Defendant wrongfully caused Plaintiff to make payments toward the WebBank/Fingerhut Account on or about May 18, 2015, June 16, 2015, and July 16, 2015, even though Defendant was not properly authorized to collect on the debt. (ECF No. 1-1 ¶¶ 23–39.) The Court finds Plaintiff has included the factual basis for the allegations of fraud with sufficient specificity to put Defendant on notice of the "precise misconduct with which [it is] charged." *See Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004); *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 491 (D.N.J. 2009).

Accordingly, Defendant's Motion for Judgment on the Pleadings as to the CFA claim is **DENIED without PREJUDICE**.

    C.    **Unjust Enrichment**

Defendant argues Plaintiff's unjust enrichment claim fails for a variety of reasons, including: (1) where the underlying tort claims are dismissed, the unjust enrichment claim must be dismissed because "New Jersey does not recognize unjust enrichment as a solely independent [] cause of action" (ECF No. 14-1 at 24–25); (2) "the existence of an express contract on the same subject matter wholly precludes the awarding of relief under an alternative theory of unjust enrichment" (*id.* at 26–27); and (3) Plaintiff cannot plead the required elements of unjust enrichment (*id.* at 27–28). Plaintiff opposes, arguing, among other things, there are "factual issues" as to whether "(i) if it has any rights to any contract with the Plaintiff and (ii) even if there is an assignment whether it is legally enforceable since [Defendant] was unlicensed when it was allegedly made." (ECF No. 17 at 37.) The Court agrees with Defendant that the claim should be dismissed for failure to state a claim but not for the precise reason Defendant argued.

11

Unjust enrichment is an equitable theory of recovery centered on the principle that "a person shall not be allowed to enrich himself unjustly at the expense of another." *Assocs. Com. Corp. v. Wallia*, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986). In New Jersey, a plaintiff alleging unjust enrichment must demonstrate that (1) the defendant received a benefit; and (2) retention of that benefit by defendant would work an injustice. *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994). "The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Id.*; *Yingst v. Novartis AG*, 63 F. Supp. 3d 412, 417 (D.N.J. 2014).

With respect to unjust enrichment, Plaintiff alleges he conferred a direct benefit on Defendant. (*See* ECF No. 1 ¶¶ 33–35.) Specifically, Plaintiff alleges "Defendant['s] continued collection attempts caused Plaintiff to make payments towards the WebBank/Fingerhut [Account]" in the amount of "$391." (*Id.* ¶ 34.) Plaintiff alleges Defendant was unjustly enriched "by the funds . . . received from the Plaintiff and Subclass." (*Id.* ¶ 77.) Absent from the Complaint, however, is any allegation Plaintiff expected remuneration in return for paying the $391. In fact, Plaintiff alleges Defendant commenced collection efforts against Plaintiff "when it was not properly licensed to do so" (*id.* ¶ 32) and alleges the debt "was void upon assignment to Defendant[]" (*id.* ¶ 36). In other words, the Complaint makes clear Plaintiff did not expect anything in return for the $391. Therefore, Plaintiff insufficiently pleads a claim for unjust enrichment under New Jersey law. *See Hughes v. Panasonic Consumer Elecs. Co.*, Civ. A. No. 10-846, 2011 WL 2976839, at *27 (D.N.J. July 21, 2011); *Nelson v. Xacta 3000 Inc.*, Civ. A. No. 08-5426, 2009 WL 4119176, at *7 (D.N.J. Nov. 24, 2009) (dismissing the unjust enrichment claim where amended

12

complaint "ma[de] clear [plaintiff] had no expectation of remuneration from [defendant] at the time [he] allegedly conferred a benefit on [defendant]").

Accordingly, Defendant's Motion for Judgment on the Pleadings as to the unjust enrichment claim is **GRANTED without PREJUDICE**.[2]

### D.     Entire Controversy doctrine and/or *res judicata*

The Court now turns to Defendant's contention this Court lacks jurisdiction over this matter pursuant to the entire controversy doctrine and/or *res judicata*. (ECF No. 14-1 at 31–32.) Specifically, according to Defendant, both the entire controversy doctrine and *res judicata* "require dismissal of the claims in Plaintiff's Complaint arising out of [Defendant's] collection actions in a state court." (*Id.* at 30.) Plaintiff opposes arguing, among other things, "[w]ithout a prior action [identified] neither defense [of the entire controversy doctrine or *res judicata*] can be established" to bar Plaintiff's claims. (ECF No. 17 at 16.)

The entire controversy doctrine, codified in Rule 4:30A of the New Jersey Court Rules, is a New Jersey state law doctrine that is an "idiosyncratic" form of claim preclusion with a slightly broader scope, but the same basic elements as traditional claim preclusion. *See Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The entire controversy doctrine is applicable in federal court by virtue of the Full Faith and Credit Act, 28 U.S.C. § 1738. *Rycoline*, 109 F.3d at 887; *DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1045 (D.N.J. 2011). This doctrine "is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999). "As an equitable doctrine, its application is flexible,

---

[2] Because the Court grants Defendant's Motion as to this claim, the Court need not address Defendant's other reasons for dismissal.

with a case-by-case appreciation for fairness to the parties." *Id.* at 137. The doctrine's purposes are threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. Super. Ct. App. Div. 1995). The Third Circuit has held that New Jersey's entire controversy doctrine applies to bar claims in a federal court when there was a previous state court action involving the same transaction. *See Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991); *Mason v. US Bank*, Civ. A. No. 161366, 2016 WL 7189828, at *4 (D.N.J. Dec. 12, 2016).

The Court finds the entire controversy doctrine is inapplicable in this case because there is no evidence of a final judgment entered in state court. In fact, Defendant contends "[t]he Complaint is devoid of any allegation[] that [Defendant] ever filed a civil collection complaint against Plaintiff." (ECF No. 14-1 at 29 n.3.) The Third Circuit has held that, as a species of *res judicata*, the entire controversy doctrine is inapplicable prior to the entry of a final judgment. *Rycoline*, 109 F.3d at 889; *see Youssef v. Department of Health & Senior Svcs.*, 423 F. App'x 221, 223 (3d Cir. 2011) (reversing dismissal based on the entire controversy doctrine because "as a variant of *res judicata*, [the entire controversy doctrine] requires the existence of a prior judgment that is final, valid, and on the merits"). If no final judgment has been entered in the state court, then there is no prior judgment. Therefore, because there is no evidence of a prior final judgment on the merits, and Defendant is unable to point to one, the Court must deny the application of the entire controversy doctrine and *res judicata* here. *See DeHart*, 811 F. Supp. 2d at 1045; *Gould v. J.P. Morgan Chase*, Civ. A. No. 2104663, 2021 WL 4272858, at *6 (D.N.J. Sept. 21, 2021) (where

14

defendant could point to no final judgment on the merits in a prior case, the court concluded neither entire controversy nor *res judicata* applied).

IV. **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**. An appropriate order follows.

Dated: September 24, 2021

                                              */s/ Brian R. Martinotti*
                                              **BRIAN R. MARTINOTTI**
                                              **UNITED STATES DISTRICT JUDGE**