<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TODD M. NORTH,<br><br>    Plaintiff,<br><br>    v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>    Defendant. | Case No. 2:20-cv-20190 (BRM) (JSA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

  Before the Court are two motions. First, Defendant Portfolio Recovery Associates, LLC ("PRA") moves for summary judgment ("PRA's Motion for Summary Judgment") on the sole cause of action in Plaintiff Todd M. North's ("North") Amended Complaint (ECF No. 129), pursuant to Federal Rule of Civil Procedure 56 (ECF No. 142). North filed an opposition (ECF No. 143), and PRA filed a reply (ECF No. 144). Second, North moves for class certification ("North's Motion for Class Certification") pursuant to Federal Rule of Civil Procedure 23. (ECF No. 145.) PRA opposed (ECF No. 147), and North replied (ECF No. 148). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, PRA's Motion for Summary Judgment (ECF No. 142) is **GRANTED**, and North's Motion for Class Certification (ECF No. 145) is **DENIED** as moot.

I.  **BACKGROUND**

   A. **Factual Background**[1]

This matter pertains to PRA's repeated attempts to collect debts owed by North on two accounts, a line of credit obtained from WebBank/FingerHut ("WebBank Account") and a Capital One credit card account ("Capital One Account"), which North contends violated the Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*. (ECF Nos. 142-3 (Def. Statement of Material Facts ("SOMF")) ¶¶ 4–13; 143-2 (Pl. Response to Def. SOMF) ¶¶ 4–13.) PRA is registered as a limited liability company in Virginia. (ECF Nos. 142-3 ¶ 1; 143 ¶ 1.) North is a citizen of New Jersey. (ECF Nos. 142-3 ¶ 3; 143-2 ¶ 3.) PRA "purchas[es] and tak[es] assignment of defaulted credit accounts originally extended by other creditors, which it then enforces against the borrowers through collection letters, lawsuits, and post-judgment collection efforts." (ECF Nos. 142-3 ¶ 2; 143-2 ¶ 2.) PRA asserts North is a borrower who is delinquent on the WebBank Account. (ECF No. 142-3 ¶ 4.) North disputes this in part, offering instead that "Defendants allegedly purchased and attempted to take assignment of a WebBank/FingerHut account that had allegedly been extended to Plaintiff North," (ECF No. 143-2 ¶ 4). There is no dispute North paid the WebBank

---

[1] The background facts in this subsection are taken from the parties' admitted statements of material fact and accompanying exhibits. The Court deems supported factual contentions to be admitted unless sufficiently disputed by reference to record evidence, and similarly construes as undisputed all facts in Defendant's Statement of Material Fact ("SOMF") to which Plaintiffs object without citing to any record evidence. *See* New Jersey Local Civil Rule 56.1(a); *Ullrich v. U.S. Sec'y of Veterans Affs.*, 457 F. App'x 132, 136–37 (3d Cir. 2012) ("[T]he party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record . . . . A plaintiff's mere belief or contention . . . is not enough to create a dispute of material fact sufficient to survive summary judgment . . . . Federal Rule 56 explicitly requires the party asserting the absence or existence of a genuinely disputed fact to support that assertion by citing to specific parts of the record. A court may consider other materials in the record, but need only consider cited materials and may consider undisputed any fact not properly addressed by the party opposing it." (citations omitted)); *Stouch v. Twp. of Irvington*, Civ. A. No. 03-06048, 2008 WL 2783338, at *2 n.1 (D.N.J. July 16, 2008) ("deem[ing] [d]efendants' uncontested facts as admitted, unless disputed by [p]laintiffs in their brief and supported by the evidence").

Account in full to PRA, used to purchase a massager on credit, and could not be used to pay for any services. (ECF Nos. 142-3 ¶¶ 5–7; 143-2 ¶¶ 5–7.) According to PRA, it purchased North's "non-performing charged-off debt" following North's "default and contractual breach" on repaying the WebBank Account. (ECF No. 142-3 ¶ 8.) North disputes being in "contractual breach." (ECF No. 143-2 ¶ 8.) PRA did not sell any merchandise or services to North. (ECF No. 142-3 ¶ 9.) The parties disagree whether PRA is a debt collector (ECF No. 142-3 ¶ 10) or assignee (ECF No. 143-2 ¶ 10). North contests he was delinquent on debts he incurred on the Capital One Account (ECF No. 142-3 ¶ 11), but the parties do not dispute North paid off the Capital One Account to PRA (*id.* ¶ 11; ECF No. 143-2 ¶ 11). PRA purchased North's "nonperforming debt for the charged-off Capital One credit card account" following his default on repayment obligations. (ECF No. 142-3 ¶ 12; 143-2 ¶ 12.) The Capital One Account was only used to make purchases prior to PRA purchasing the debt, and PRA did not sell North any merchandise or services regarding the Capital One Account. (ECF No. 142-3 ¶ 13.) North nonetheless contends, "though PRA did not itself sell merchandise or services directly to Plaintiff, PRA engaged in subsequent performance on the merchandise sold to Plaintiff through collection." (ECF No. 143-2 ¶ 13.)

North amended the Complaint on February 21, 2024 (*id.*), asserting PRA "commenced . . . collection activities against Plaintiff . . . when it was not properly licensed to do so under the [New Jersey Consumer Finance Licensing Act ("NJCFLA"), N.J. Stat. Ann. § 17:11C-3] or any other New Jersey consumer lending statute" (ECF Nos. 142-3 ¶ 17; 143-2 ¶ 17). To refute this allegation and demonstrate PRA has been licensed under the NJCFLA since 2015, PRA submitted a licensee report from the New Jersey Department of Banking and Insurance and a deposition of Ricky Vaughn, Regulatory Complaints Analyst at PRA ("Vaughn Deposition" (ECF No. 142-6, Ex. C)). (ECF Nos. 142-3 ¶ 18; 143-2 ¶ 18.) North disputes this evidence is probative of PRA's date of

NJCFLA licensure, and he contends PRA first received a license as a consumer lender on February 2, 2018. (ECF No. 143-2 ¶ 18 (citing ECF Nos. 143-1 ("Kim Declaration") ¶ 2, 143-3 ("New Jersey Consumer Lender License Verification") at 1).) North asserts PRA was first licensed as a consumer lender on February 2, 2018 (*id.* ¶ 20), and as a sales finance company on December 4, 2015 (*id.* ¶ 21).

### B. Procedural History

North initiated this action against PRA in the Superior Court of New Jersey, Essex County, on August 6, 2019. (ECF Nos. 142-3 ¶ 14; 143-2 ¶ 14.) PRA removed it to this Court on September 13, 2019, based on federal diversity jurisdiction (ECF Nos. 142-3 ¶ 15; 143-2 ¶ 15), but the Court remanded the action after it determined it did not have subject matter jurisdiction (ECF Nos. 142-3 ¶ 16; 143-2 ¶ 16). PRA again removed this action on December 22, 2020, under the Class Action Fairness Act ("CAFA"). (*Id.*) On August 30, 2021, the Court denied North's renewed motion to remand. (ECF No. 19.)

The original Complaint alleged three counts: (1) violations of the NJCFLA; (2) violations of the CFA; and (3) unjust enrichment. (ECF No. 1-2, Ex. B.) On April 9, 2021, PRA moved for judgment on the pleadings (ECF No. 14), which this Court granted as to the NJCFLA and unjust enrichment claims but denied as to the CFA claim (ECF No. 21). Following years of procedural litigation,[2] North filed an Amended Complaint alleging one count of violations of the CFA on

---

[2] The full procedural background of this matter is well-known to the parties and was previously recounted by the Court in its prior opinions: (1) denying North's motion to remand the action to the Superior Court of New Jersey, Law Division, Essex County (ECF No. 19); (2) granting in part and denying in part PRA's motion for judgment on the pleadings (ECF No. 21); and (3) denying North's appeal of the Honorable Jessica S. Allen's ("Judge Allen") January 22, 2024 Order (ECF No. 112) denying North's motion for reconsideration of a September 27, 2023 Order (ECF No. 90) which granted in part and denied in part North's motion for leave to file an amended complaint, and affirming Judge Allen's January 22, 2024 Order (ECF No. 135). Accordingly, the Court addresses only the background associated with the motions at hand.

behalf of himself and all others similarly situated. (ECF No. 129.) PRA filed an answer on March 6, 2024. (ECF No. 131.)

On May 3, 2024, the parties submitted a proposed briefing schedule for summary judgment and raised a dispute over North's request for additional discovery based on the significant fluctuation of the proposed class size "from 414,203 members to 615,938 and now to 30,020." (ECF No. 137 at 1.) The Court requested a joint letter from the parties on the class size and discovery disputes. (ECF No. 138.) Upon receipt and review of the requested joint letter, filed on May 14, 2024 (ECF No. 139), the Court issued an order adopting North's interpretation of the class definition provided in the Amended Complaint, instructing PRA to produce relevant documents and information, and denying North's request for an additional Rule 30(b) deposition (ECF No. 140). Per the parties' agreed-upon briefing schedule (ECF No. 137), PRA moved for summary judgment (ECF No. 142), North opposed (ECF No. 143), and PRA replied (ECF No. 144) on September 6, 2024. On the same day, North moved for class certification (ECF No. 145), PRA opposed (ECF No. 147), and North replied (ECF No. 148).

## II.   MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored

5

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at

6

255)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

### B. Decision

PRA asks this Court to grant summary judgment in its favor because the undisputed facts show North cannot satisfy the three elements of the CFA, which is thus inapplicable to the parties. (ECF No. 142 at 7–18.) PRA argues North cannot satisfy the first element of a CFA claim because PRA did not "engage in the sale of merchandise . . . [or] commit[] unlawful conduct in connection with such a sale" as required by the statute. (*Id.* at 12.) Specifically, PRA contends a collection agency that purchases debt "*after* [a debtor] was already in default [can] not – as a matter of law – [be engaged in] activities 'in connection with' the sale of merchandise or services," because the sale necessarily occurred *before* the debt on it was incurred. (*Id.* at 13 (quoting *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 339 (App. Div. 2013)) (emphasis added).) PRA emphasizes "the only time subsequent purchasers of debt have been found subject to the CFA [is] when their actions constitute 'subsequent performance' of a contract within the meaning of [the statute]," and asserts debt collection does not constitute subsequent performance. (*Id.* at 14 (citing *Delgado v. LVNV Funding, LLC*, 2024 N.J. Super. Unpub. LEXIS 713, *16–17 (N.J. Super Ct. Law Div. Apr. 22, 2024)).) PRA further cites *Nicholls v. Portfolio Recovery Associates, LLC*, in which the Court rejected the argument that PRA's attempts to collect on a debt qualify as activity in connection with the sale of merchandise for purposes of the CFA, as additional support that PRA's debt collection efforts do not violate the CFA. (*Id.* at 15–16 (citing Civ. A. No. 09-5714, 2010 WL 1257738, at *5 (D.N.J. Mar. 29, 2010)).)

PRA next argues North cannot show an ascertainable loss for purposes of meeting the second element of a CFA claim "because he only paid a debt he actually owed." (*Id.* at 18.) Regarding the third element, PRA argues simply that, given the absence of the first and second elements, North "cannot establish the causal connection between the two." (*Id.*) Finally, PRA

8

asserts it has no liability under the NJCFLA[3] because, as "a debt buyer that . . . does not provide loans . . . [or] extend credit," it is not a consumer lender and is not required to be licensed as such under NJCFLA. (*Id.* at 19.) Contrary to North's suggestion a debt buyer is considered a consumer lender under the statute, PRA contends "the plain text of the statute only includes those 'in the business of buying, discounting, or endorsing notes[,]'" and cites to a list of cases distinguishing between notes and debts. (*Id.* at 19–20.) PRA acknowledges two recent cases from this District rejected this distinction and found debt buyers to be consumer lenders for purposes of the NJCFLA. (*Id.* at 20–21 (citing *Valentine v. Mullooly, Jeffrey, Rooney & Flynn LLP*, Civ. No. 2:20-cv-14152, 2022 WL 2473434, at *5 (D.N.J. July 6, 2022); *Peralta v. Ragan*, Civ. A. No. 1:22-CV-01660, 2022 U.S. Dist. LEXIS 234300, at *6–7 (D.N.J. Dec. 30, 2022)). Notwithstanding these two cases, PRA urges the Court to consider the more recent analysis of the New Jersey Appellate Division opinion in *Woo-Padva v. Midland Funding*, in which the Court affirmed summary judgment and found "the defendant was not a consumer lender under the NJCFLA because the defendant was a debt buyer that purchased Plaintiff's defaulted and charged-off HSBC credit card account" and "[d]efendant did not provide loans" or "extend credit." (*Id.* at 21 (citing *Woo-Padva v. Midland Funding*, Dkt. No. A-1996-21, 2023 N.J. Super. Unpub. LEXIS 1550, at *2, 7, 13–14 (App. Div. Sept. 21, 2023)).) PRA suggests the facts here are nearly identical to those in *Woo-Padva* and compel the same result. (*Id.*)

In his opposition, North principally advances the argument PRA lacked the appropriate licenses under the NJCFLA when it acquired and later engaged in collection efforts regarding the

---

[3] To be clear, there is no longer a separate claim under the NJCFLA as it was dismissed in this Court's prior opinion granting in part and denying in part judgment on the pleadings (ECF No. 21). However, North suggests PRA's lack of a license required by the NJCFLA constitutes unlawful conduct under the CFA. (*See infra*.)

WebBank and Capital One Accounts in violation of the CFA. (ECF No. 143 at 3–4.) North argues there is a dispute of material fact as to the application of the CFA because PRA does not contest it obtained a sales finance company license after acquiring the WebBank Account, indicating it knew it was obligated to do so and thus subject to the CFA. (*Id.* at 7–8.) North contends PRA's argument it is not a consumer lender is difficult to square with "its decision to obtain licensure under the NJCFLA as a consumer lender *after PRA acquired the Capital One Consumer Loan and contract governing Plaintiff's accounts*," and further rejects the distinction drawn between notes and debts, which he claims did not form a basis of the opinion in *Woo-Padva*. (*Id.* at 8, 12.) Citing "NJCFLA's statutory predecessors," North argues there is an implied private right of action alongside enforcement actions by the Commissioner of Banking and Insurance (*id.* at 13, 18) and suggests much of PRA's reasoning is contravened by the case law and an appropriate, historically grounded interpretation of the statute (*id.* at 23).

PRA replies that this Court dismissed North's NJCFLA claim with prejudice nearly four years ago and held the NJCFLA does not provide for a private right of action such that it is the law of case, despite North's apparent attempts to resurrect it through his opposition. (*Id.* at 2–3.) PRA further argues North should not be allowed "to use the CFA to privately enforce the NJCFLA," and cites to cases involving the New Jersey Insurance Producer Licensing Act that rejected attempts to use the CFA to enforce a licensing statute that lacks a private right of action. (*Id.* at 3–7.) PRA asserts because the alleged NJCFLA licensure issues cannot be used as a backdoor to satisfy a CFA claim and thus North's debts are not void, there is no ascertainable loss as required by the CFA given North does not dispute the debts associated with either his WebBank or Capital One Accounts. (*Id.* at 13.) Additionally, PRA reiterates the CFA cannot apply because mere debt collection does not constitute subsequent performance, and notes North has not produced any

10

evidence to the contrary through discovery. (*Id.* at 8–12.) Finally, PRA challenges North's citation of numerous cases involving purported violations of the Fair Debt Collection Practices Act ("FDCPA") as "drawing a false equivalency between the federal [FDCPA] and the [state] CFA." (*Id.* at 13–15.)

The CFA states that it is unlawful for any person to use or employ

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J. Stat. Ann. § 56:8-2. The CFA defines "sale" to include "any sale, rental or distribution, offer for sale, rental or distribution[,] or attempt directly or indirectly to sell, rent or distribute[.]" *Id.* § 56:8-1(e). It defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale[.]" *Id.* § 56:8-1(c). Further, it defines a "person" as "any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or *cestuis que trustent* thereof [.]" *Id.* § 56:8-1(d).

To succeed on a claim under the CFA, a plaintiff must show "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bonnieview Homeowners Ass'n v. Woodmont Builders*, 655 F. Supp. 2d 473, 503 (D.N.J. 2009) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)). Unlawful conduct can be "'affirmative acts and knowing omissions,' as well as 'violations of regulations promulgated under' the CFA." *Ajayi v. CULA, LLC*, Civ. A. No. 23-4014, 2024 WL 2105557, at *4 (D.N.J. May 9, 2024). The New Jersey Supreme Court explained

an ascertainable loss is neither hypothetical nor illusory, but one capable of calculation. *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). It must be "more than just unmet expectation." *Dzielak v. Whirpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014). One of two theories can be used to calculate losses under the CFA, either the out-of-pocket loss theory or the loss-in-value theory. *See id.*

The CFA is considered "remedial legislation," and courts therefore construe its prohibitions "liberally to accomplish its broad purpose of safeguarding the public." *Lee v. Carter-Reed Co., L.L.C.*, 4 A.3d 561, 577 (N.J. 2010) (citing *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 441 (N.J. 2004)). This broad construction is necessary because "the CFA could not possibly enumerate all, or even most, of the areas and practices that it covers without severely retarding its broad remedial power to root out fraud." *Lemelledo v. Beneficial Mgmt.*, 696 A.2d 546, 551 (N.J. 1997). Nevertheless, a court must "abide by the [CFA's] definitions that control the boundaries of the [CFA's] reach." *Lee v. First Union Nat'l Bank*, 971 A.2d 1054, 1059 (N.J. 2009).

In contrast, the NJCFLA requires licensure of certain types of entities before they may conduct business in the State. *See* N.J. Stat. Ann. § 17:11C-3. The statute principally provides "[n]o person shall engage in business as a consumer lender or sales finance company without first obtaining a license or licenses under this act." *Id.* § 17:11C-3(a). By its statutory language, NJCFLA does not confer a private right of action; rather, it vests enforcement powers entirely in the Commissioner of Banking and Insurance. *See id.* § 17:11C-18.

Courts in this District have roundly rejected efforts to read a private right of action into the NJCFLA. *See Browne v. National Collegiate Student Loan Trust*, Civ. A. No. 21-11871, 2021 WL 6062306, at *3 (D.N.J. Dec. 22, 2021) (collecting cases). Indeed, as PRA notes in its reply, this Court articulated the same in its opinion nearly four years ago, in which it granted PRA's motion

for judgment on the pleadings with prejudice as to the NJCFLA claim. (ECF No. 144 at 2 (citing ECF Nos. 21 at 7; 22 at 1.) North's attempt to connect PRA's purported lack of licensure under the NJCFLA to the unlawful conduct element of a CFA claim is therefore unavailing. (ECF No. 143 at 3–4.)

However, even assuming North makes a CFA claim independent of his attempt to incorporate the NJCFLA, he fails to present sufficient evidence he experienced an ascertainable loss under the CFA, and therefore his claim cannot survive summary judgment. North does not dispute his debts on the WebBank or Capital One Accounts (*id.* ¶¶ 4–5, 11) and admits to having paid off the balances on both accounts to PRA (*id.* ¶¶ 8, 10–13). Therefore, North's tacit admission of debts he incurred and later repaid shows he suffered no out-of-pocket loss, much less any sort of loss in value. Given North cannot show an ascertainable loss under any theory of loss as required to pursue a claim under the CFA, there is no path forward for North's CFA claim. *See Nebraska*, 507 U.S. at 590 ("[S]ummary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." (internal quotations and citations omitted)).

Accordingly, the Court will not address the other required elements of the CFA, and PRA's Motion for Summary Judgment is **GRANTED**. As North's CFA claim was the sole cause of action in the operative Amended Complaint (ECF No. 129), judgment in favor of PRA is **GRANTED** in its entirety.

### III.   MOTION FOR CLASS CERTIFICATION

Having granted PRA's Motion for Summary Judgment, which disposed of North's sole remaining claim, *see supra* Section II.B., the Court does not reach the parties' arguments here because North's Motion for Class Certification is now moot.

Federal Rule of Civil Procedure 23(c)(1) requires a court to determine whether a class should be maintained "as soon as practicable." Nevertheless, courts regularly decide summary judgment motions prior to ruling on a certification motion, including in cases in which the many of the same arguments made in support of summary judgment were raised before a motion for class certification was filed. *See Saroza v. Lyons, Doughty & Veldhuis, P.C.*, Civ. A. No. 17-00523, 2021 WL 2549273, at *4 (D.N.J. June 22, 2021) (collecting cases). This is the case here, as PRA raised many of the same arguments in its motion for judgment on the pleadings. (ECF No. 14.) Additionally, North filed the Motion for Class Certification concurrently with PRA's Motion for Summary Judgment on September 6, 2024. (ECF Nos. 142, 145.) Therefore, given PRA's Motion for Summary Judgment is granted and the Amended Complaint is dismissed, the Court is left without a live controversy for which to consider certifying a class and will not decide North's Motion for Class Certification. *See Saroza*, 2021 WL 2549273, at *6.

Accordingly, North's Motion for Class Certification is **DENIED** as moot.

### IV. CONCLUSION

For the reasons set forth above, and for good cause having been shown, PRA's Motion for Summary Judgment (ECF No. 142) is **GRANTED**, and North's Motion for Class Certification (ECF No. 145) is **DENIED** as moot. An appropriate order follows.

Dated: May 21, 2025

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**